Filed 1/30/14  In re Dylan M. CA3

**NOT TO BE PUBLISHED**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Lassen)

----

| | |
|---|---|
| In re DYLAN M., a Person Coming Under the Juvenile Court Law. | C074228 |
| LASSEN COUNTY DEPARTMENT OF HEALTH AND SOCIAL SERVICES, | (Super. Ct. No. J-5946) |
| Plaintiff and Respondent, | |
| v. | |
| SHANNON S., | |
| Defendant and Appellant. | |

Shannon S., mother of 12-year-old Dylan M., appeals from the order of the juvenile court sustaining the petition, adjudging the minor a dependent, and ordering placement out of the home.  (Welf. & Inst. Code, §§ 355, 356, 358, 395.)[1]  Mother argues that the jurisdictional finding pursuant to section 300, subdivision (g) (hereafter section

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

300(g)) and the dispositional order are not supported by substantial evidence and that failure to comply with the notice provisions of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) compels reversal. The Department of Health and Social Services (Department) has conceded the ICWA notice error and we reverse to permit compliance with the ICWA. We further conclude the juvenile court did not properly consider whether the provisions of section 300(g) were satisfied at the time of the jurisdictional hearing and reverse to permit the juvenile court to apply the proper standards in evaluating whether the minor comes within the provisions of section 300(g).

## FACTUAL BACKGROUND

Mother began serving a sentence in local custody in March 2012 with a release date in 2015. To provide care for the minor while she was in custody, mother attempted to create an informal guardianship with the maternal grandmother and left the minor in her care. Father is in custody in state prison with a possible release date of 2014.

The minor was diagnosed with Type I diabetes in 2010 and there were ongoing reports of inadequate care of the minor by mother and the maternal grandmother. The minor was hospitalized in February 2013 for hyperglycemia and again in March 2013 for hypoglycemia. The Department placed the minor in foster care due to the maternal grandmother's inability to provide adequate care for the minor to maintain consistent blood levels thereby placing him at risk of serious physical harm.

The Department filed a petition on March 6, 2013, alleging the minor came within the provisions of section 300(g) because mother and father were currently incarcerated and "unable to arrange or provide the [minor] with ongoing care and supervision."[2] In a

---

[2] The petition also alleged the minor came within section 300, subdivision (b) because mother made an inappropriate plan for the minor's care in March 2012. However the court did not sustain this allegation, leaving the sole basis for jurisdiction section 300(g).

2

discussion with the social worker the same day, mother identified Vanessa A. and Glenn M. as possible placements for the minor but provided no current contact information for either one. The court ordered the minor temporarily detained.

The jurisdiction report stated the most recent referrals—when the minor was hospitalized for wildly fluctuating glucose levels—resulted from the minor being responsible for monitoring his own glucose levels and for maintaining a proper diet. Mother had made an informal guardianship plan when she was incarcerated but the document expired after six months and could not be renewed. The minor told the social worker he needed someone to monitor his care. The minor was happy in his foster placement and did not want to move.

An addendum stated that the minor told mother he did not know Vanessa A. and refused to visit with her but would consider living with her if things did not work out in his current placement. On April 29, 2013, mother again identified Vanessa as a person with whom she could arrange temporary care for the minor while she was incarcerated. The social worker spoke with Vanessa the next day and Vanessa confirmed her interest in providing care for the minor. In subsequent discussions, Vanessa told the social worker she was aware of the minor's diagnosis but not of the specifics of his medical needs and care. Vanessa also told the social worker that her sister would provide some supervision when her work and school schedule required her to be home late. A criminal background check showed Vanessa's most recent conviction was in 2008. The Department concluded that mother could not arrange for a home which would not be detrimental to the minor based on Vanessa's criminal history.

At the contested jurisdictional hearing, mother's counsel called Vanessa A., who testified she knew mother and the minor because her mother and the maternal grandmother were friends and she had seen the minor frequently before she moved to Sacramento and had some contact with mother and the minor thereafter. Vanessa

3

testified she has two children and her older child remembered the minor. She acknowledged her past criminal and substance abuse history but testified she had been drug and alcohol free for the last five years. Vanessa testified she was working and going to college and had daycare available for her own children and also arranged her schedule to be able to pick them up from school. She and her sister had discussed the minor's special medical needs and she was willing to learn how to monitor him and meet his needs. She had some familiarity with dealing with diabetes management because her mother was diabetic.

Mother testified she had known Vanessa A. since they were teenagers and that her home would be a good place for the minor because she had her life together, was raising her own children, and would look out for the minor's well-being.

The Department argued any placement arranged by mother had to be adequate and placement with Vanessa A. did not meet that standard. Mother's counsel responded that only appropriate care and supervision was required and a guardianship was not necessary. The court stated that the objective of dependency proceedings was to return the minor to the parent but this was currently not possible because both parents were in custody. The court sustained the section 300(g) allegation stating: "[T]he custodian with whom the child was left was unable to provide appropriate care for the child and the child's special needs, that the child's mother was unable to provide the child with ongoing care and supervision as she's currently incarcerated and by leaving the child with her mother, her mother was unable to provide adequate care for the child and his special needs, and such an ability to provide care and supervision for the child on the part of the mother endangers the child's physical and emotional health, safety and well-being and places the child as risk of physical and emotional harm and damage." The court did not consider whether mother currently could arrange for the care of the minor.

Following the jurisdictional hearing, mother's counsel filed points and authorities regarding whether the section 300(g) allegations could be contested at jurisdiction. Counsel cited authority for the proposition that all mother had to do at jurisdiction was to provide a plan for the minor's care.

The Department responded that, under the cited authorities, the plan had to be suitable and adequate and argued that the Department and the minor had to be able to review the suitability of the plan. The Department, relying on section 361.3, which governs consideration of relative placement by the Department and the court, argued that Vanessa A. had not been approved and thus could not be considered an appropriate caretaker for the minor.

The disposition report stated that mother identified Vanessa A. as a caretaker for the minor and Vanessa said she was willing to care for the minor. In his foster placement, the minor no longer controlled his medical supplies, testing or injections and no longer had the dramatic blood sugar fluctuations that had led to his detention. His grades were improving and he felt less stressed. The Department recommended bypassing services to both parents due to the length of their respective criminal sentences. The Department was considering guardianship as a permanent plan for the minor and assessed Vanessa. Vanessa was aware of the minor's special needs and that she needed more information to manage his care. The Department needed to complete an assessment of Vanessa's home and do background checks on her roommates and sister who lived there before placement could occur. The report concluded mother was now able to arrange for the minor's ongoing care and supervision with a non-related extended family member who was willing to accept guardianship for the minor. The report suggested Vanessa was an appropriate caretaker for the minor but that a complete guardianship assessment was needed before the Department could recommend her appointment and requested the dispositional hearing be continued.

5

In an addendum report, the Department changed the recommended disposition to long-term foster care for the minor. Further investigation of Vanessa A.'s home disclosed that in addition to Vanessa, her children and her sister, another couple and their children were living in the three-bedroom, two-bath home. Vanessa said the second couple was going to move but the moving date was not specified. The home was clean and sanitary but the sister and the adult male each had convictions in 2011 for driving under the influence. Because the convictions were recent and nonwaivable, Vanessa could not be approved for guardianship. Mother had no other care provider alternatives.

At the dispositional hearing, the court, treating the points and authorities as a motion for guardianship, denied the motion, bypassed services, and placed the minor in long-term foster care with the current caretaker.

## DISCUSSION

### I. Section 300(g)

Mother contends the juvenile court should not have asserted jurisdiction over the minor because she was able to arrange for the minor's ongoing care at the time of the jurisdictional hearing.

The juvenile court asserted jurisdiction over the minor pursuant to section 300(g), which contains four disjunctively stated bases for jurisdiction.[3] The provision relevant here is: "[T]he child's parent has been incarcerated or institutionalized and cannot arrange for the care of the child . . . ." The provision requires proof of only those two elements. No additional proof of risk of harm or inadequacy of a prior custodian is

---

[3] The disjunctive clauses are: The child was left without any provision for support; the parent has voluntarily surrendered the child and did not return; the parent is incarcerated and cannot arrange for care of the child; or an adult custodian is unable or unwilling to care for the child and a parent cannot be located. (§ 300(g).)

6

necessary as the risk to the minor is apparent by the existence of the two elements. Several cases have construed this provision. We review the cases to distill the relevant principles to be applied by the juvenile court in ruling on whether jurisdiction has been established under the relevant clause of section 300(g).

Soon after the provision was enacted, it was construed in *In re Aaron S*. (1991) 228 Cal.App.3d 202. In *Aaron S*., the father was incarcerated and sent a letter to his counsel stating he wanted the minor cared for by the paternal grandmother. (*Id*. at pp. 206-207.) At the jurisdictional hearing, the court found the minor came within the provisions of section 300(g) " 'in that the minor has been left with no provision for support by reason of the parent's incarceration or institutionalization,' " sustained the petition, removed the minor and approved placement with the paternal grandmother. (*Aaron S.*, at p. 207.) Applying the plain language of the statute, the Court of Appeal for the First Appellate District, Division Two, concluded that "section 300, subdivision (g) applies when, at the time of the hearing, a parent has been incarcerated and does not know how to make, or is physically or mentally incapable of making, preparations or plans for the care of his or her child." (*Id.* at p. 208.) The court found that the juvenile court did not focus on the father's *present ability* to arrange care for the child, but on his past actions. (*Ibid*.) The court held that the statute required proof that the parent was unable to arrange for care at the time of the hearing, not that the parent failed to do so at some prior point in time. The court also concluded that the juvenile court had improperly combined two of the disjunctive clauses of the statute in making its ruling. (*Id.* at pp. 210-211.) The court found that the Legislature did not intend dependencies to be established under section 300(g) "where the incarcerated parent is able to make suitable arrangements for his or her [child's] care." (*Aaron S.*, at p. 212.)

A second case, *In re Monica C*. (1995) 31 Cal.App.4th 296, dealt primarily with adequacy of reunification services but also discussed section 300(g) as it applied to the

7

Department of Social Services' (DSS) involvement with the family. The mother was in custody when she gave birth to Monica C. and entrusted the infant to the maternal great-aunt. (*Monica C.,* at p. 299.) In two subsequent incarcerations the mother again arranged for the maternal great-aunt to assume custody while she was in prison. (*Ibid.*) At some point, the maternal great-aunt filed a petition for guardianship, which triggered a home evaluation and DSS concluded the maternal great-aunt and her husband did not have the physical abilities to provide appropriate long-term care for Monica. (*Ibid.*) After the guardianship petition was denied, DSS subsequently filed a dependency petition relying on "the questionable inference" that, since appellant had made a poor choice in leaving the child with the great-aunt, she could be found generally to be incapable of arranging for the care of the child. (*Ibid.*) DSS did allow the minor to remain with the maternal great-aunt but ultimately recommended a foster placement with adoption as a permanent plan, citing the ages of the maternal great-aunt and her husband (57 and 64) as a bar to long-term placement. (*Id.* at pp. 300, 301, 302.) Upon learning the court found she could not arrange for the child's care, mother gave DSS names of two alternate caretakers. (*Id.* at p. 302.) DSS did not investigate either person but told one that unless she was willing to adopt the child before the mother was released from prison, there was " 'no chance' " of being appointed as a guardian. (*Id.* at p. 302.) The court relied on *Aaron S.* to conclude that section 300(g) requires only that an incarcerated parent arrange adequately for the child during the period of incarceration. "It is irrelevant whether or not the caretaker is a suitable long-term placement." (*Monica C.,* at p. 305.) Consequently, an aging relative who might not qualify for long-term custody might still be able to provide adequate care during the length of a parent's prison term. (*Ibid.*) "Before a child comes within the jurisdiction of the juvenile court, section 300, subdivision (g), permits an incarcerated parent to make suitable *short-term* arrangements for care of the child, extending only to the expected duration of the sentence; but after the juvenile court

intervenes, the court must make a *long-term* placement, which by its terms will ordinarily extend well beyond the sentence term." (*Monica C.,* at p. 308.)

In *In re S. D.* (2002) 99 Cal.App.4th 1068, the parents left the two-year-old minor with a relative when they went out to dinner. (*Id.* at p. 1071.) The relative was arrested and police took the minor into custody. (*Id.* at p. 1072.) The next day the mother was arrested. (*Ibid.*) The petition alleged mother was incarcerated and neither parent was available to care for the minor, but there was no allegation or any evidence that the mother was unable to arrange for the child's care during her incarceration. (*Id.* at p. 1071.) In fact, mother had several options for the minor's care. (*Ibid.*) The minor was briefly placed with a maternal aunt after the detention hearing and again after the 12-month review hearing. (*Id.* at pp. 1072-1073, 1075-1076.) The court dismissed the section 300, subdivision (b) allegations leaving section 300(g) as the sole basis for jurisdiction. (*In re S. D.,* at p. 1074.) In assessing mother's claim of ineffective assistance of counsel for failing to assert a defense to section 300(g), the court stated that, if the mother could arrange for care of the minor during the period of her incarceration, the juvenile court had "no basis to take jurisdiction" and the agency "had no say in the matter." (*In re S. D.,* at p. 1077, citing *Aaron S.*, *supra*, 228 Cal.App.3d 202.) The court found it was "irrelevant that [the mother] had not already arranged for [the minor]'s care at the time of her incarceration." (*In re S. D.,* at p. 1077, citing *Aaron S.*, *supra*, 228 Cal.App.3d 208.) The court framed the issue as "whether, as of the time of the jurisdictional hearing, she could *arrange* for the care." (*Id.* at p. 1078.) The court held that (1) the issue under section 300(g) is whether the parent could arrange for care, not whether the parent had done so; and (2) the agency had the burden of proof and must establish that the parent *could not* arrange for care. (*In re S. D.,* at pp. 1078, 1079.) The court emphasized that, under the statute, the parent is not required to affirmatively prove the caretaking arrangements are suitable. (*Id.* at p. 1079.) The statute requires only that

the parent is able to make the arrangements and if the agency wishes to challenge the suitability of the arrangement it must proceed under another of the clauses in section 300(g), which requires proof of unsuitable placement and that the parent cannot be located. (*In re S. D.,* at p. 1079.) If the parent is in custody and can be located, however, the parent has the opportunity to make other arrangements if the first arrangements do not work out. (*Ibid*.)

*In re S. D.*, *supra*, 99 Cal.App.4th 1068 did not address the particular form that the arrangement for care should take. Some guidance on that question is found in *In re Athena P*. (2002) 103 Cal.App.4th 617, where the mother challenged the sufficiency of the evidence to support jurisdiction under section 300(g). The parents were arrested. (*Athena P.,* at p. 621.) While in custody, the mother gave birth to Athena and sent her to live with the grandparents. (*Id.* at p. 622.) The mother attempted to create a formal custody arrangement but the documents were never filed and the specifics of the arrangement were not known. (*Ibid*.) In finding substantial evidence supported the jurisdictional finding, the court observed that the mother had tried and failed to make the grandparents temporary legal guardians and never made any further effort to complete an arrangement for care of Athena. (*Id.* at p. 629.) The failure left the grandparents with no legal authority to consent to medical treatment, authorize vaccinations, enroll the child in daycare or prove they were entitled to her custody should that prove necessary, thus the mother was, and remained, unable to arrange for the minor's care. (*Ibid*.)

Finally, in *Maggie S. v. Superior Court* (2013) 220 Cal.App.4th 662, the mother was incarcerated when she gave birth to the minor. (*Id.* at p. 665.) The mother had designated, in writing, two relatives who declined to care for the minor and her godmother who was willing to do so. (*Id.* at p. 672.) Due to incomplete information about the designation, the juvenile court took jurisdiction over the minor. (*Ibid*.) The court concluded the juvenile court erred because the mother was able to arrange for the

10

care of the child at the time of the jurisdictional hearing. (*Ibid.*) The court also stated that the parent was not required to prove the suitability of the placement. (*Id.* at p. 673.)

From these cases and the requirements of the statute itself, we discern several guiding principles when applying the "incarcerated or institutionalized" clause of section 300(g). First, the time to assess whether the parent is able to make arrangements for care of the minor is as of the time of the jurisdictional hearing. Second, the disjunctive clauses of section 300(g) cannot be combined with each other or another subdivision of section 300 as each provides a separate basis for jurisdiction. Third, the agency has the burden of proving that the parent cannot arrange for the care of the child. Fourth, the care that is contemplated is short-term, not long-term, and a caretaker who might not be appropriate to provide long-term care may well be able to provide short-term care. Fifth, no particular form of arrangement is required so long as the parent is able to make an arrangement that will either transfer sufficient legal custody to the caretaker or provide for securing parental consent to deal with such matters as medical care, school enrollment and the like and gives the caretaker the right to custody of the child while the parent is incarcerated. Sixth, the parent is not required to prove suitability of the placement under this clause of section 300(g). The statute does not require that the arrangement be adequate or suitable although some cases have suggested this is the case. Finally, if the arrangement fails, the incarcerated parent must be given another opportunity to arrange care.

Applying these guidelines to the case before us, it is apparent that the court and the parties misunderstood what was required to establish jurisdiction under the "incarcerated or institutionalized" clause of section 300(g). The Department's focus was on establishing guardianship or requiring mother to satisfy the criteria for relative placement in section 361.3. By its terms, this section is applicable only to a placement by the

11

Department, not to a custody arrangement by a parent.[4]  While mother was asked to identify another caretaker for the minor when the placement with the maternal grandmother failed, no one actually asked mother what her arrangement for care by that caretaker would be.  There was confusion over whether the ability to arrange for the minor's care was to be assessed at jurisdiction or disposition.  The court's ruling on jurisdiction dealt with mother's arrangement for the minor's past care, not her current attempts, if any, to arrange for his care with Vanessa A. or another person.  The ruling also appears to conflate the requirements of the incarceration clause of section 300(g) with the more expansive requirements of section 300, subdivision (b) and the unwilling/unable adult custodian clause of section 300(g).

Due to the confusion, the record is unclear whether the Department actually proved mother was unable to arrange for the care of the minor at the time of the jurisdictional hearing.  Reversal is required for the juvenile court to assess whether to exercise jurisdiction over the minor pursuant to section 300(g) under current circumstances.

## II.  The ICWA Compliance

Mother contends, and the Department concedes, that notices to the identified Indian tribes were not included in the record.  The Department further notes that several deficiencies were found in the notices which were sent and acknowledges that new notices must be sent.

---

[4]  Section 361.3 provides in relevant part:  "In any case in which a child is removed from the physical custody of his or her parents pursuant to Section 361 . . . ."  (§ 361.3, subd. (a).)  Section 361 applies "[i]n all cases in which a minor is adjudged a dependent child of the court on the ground that the minor is a person described by Section 300 . . . ." (§ 361, subd. (a)(1).)

The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for, and permitting tribal participation in, dependency actions. (25 U.S.C. §§ 1901, 1902, 1903(1), 1911(c), 1912.) The juvenile court and the Department have an affirmative duty to inquire at the outset of the proceedings whether a child who is subject to the proceedings is, or may be, an Indian child. (Cal. Rules of Court, rule 5.481(a).) If, after the petition is filed, the court "knows or has reason to know that an Indian child is involved," notice of the pending proceeding and the right to intervene must be sent to the tribe or the Bureau of Indian Affairs if the tribal affiliation is not known. (25 U.S.C. § 1912; § 224.2, subd. (a); see Cal. Rules of Court, rule 5.481(b).) Proof of notice must be filed with the juvenile court. (Cal. Rules of Court, rule 5.482(a)(2)(B) & (b).) Failure to comply with the notice provisions and determine whether the ICWA applies is prejudicial error. (*In re Desiree F*. (2000) 83 Cal.App.4th 460, 472; *In re Kahlen W*. (1991) 233 Cal.App.3d. 1414, 1424.)

At the detention hearing mother claimed she may have Cherokee ancestry and that father may have "Blackfoot" ancestry.[5] Although the Department represented that it had provided the ICWA notices in both April and May 2013, the record contains no documentation of notices to or responses from the tribes or any inquiry into father's Indian heritage. Based upon this record we accept the concession, reverse the judgment and remand for further proceedings regarding compliance with the ICWA.

### III.  Dispositional Orders

Mother contends that, assuming jurisdiction was established, substantial evidence did not support the dispositional orders because the evidence did not support removal of the minor from her custody.

---

[5]  The proper name is the Blackfeet Tribe of Montana. (75 Fed.Reg. 28121 (May 19, 2010).)

When the sufficiency of the evidence to support a finding or order is challenged on appeal, even where the standard of proof in the trial court is clear and convincing, the reviewing court must determine if there is any substantial evidence—that is, evidence which is reasonable, credible and of solid value—to support the conclusion of the trier of fact. (*In re Angelia P.* (1981) 28 Cal.3d 908, 924; *In re Jason L.* (1990) 222 Cal.App.3d 1206, 1214.) In making this determination we recognize that all conflicts are to be resolved in favor of the prevailing party and that issues of fact and credibility are questions for the trier of fact. (*In re Jason L.*, *supra*, 222 Cal.App.3d at p. 1214; *In re Steve W.* (1990) 217 Cal.App.3d 10, 16.) The reviewing court may not reweigh the evidence when assessing the sufficiency of the evidence. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

"A dependent child may not be taken from the physical custody of his or her parents . . . unless the juvenile court finds clear and convincing evidence of any of the following circumstances listed in paragraphs (1) to (5), inclusive . . . ." (§ 361, subd. (c).) In arguing the case, the parties rely on paragraph (1) of this subdivision which states, in relevant part: "There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody." (§ 361, subd. (c)(1).) However, the paragraph which is applicable here is paragraph (5), which provides: "The minor has been left without any provision for his or her support, *or a parent who has been incarcerated or institutionalized cannot arrange for the care of the minor*, or a relative or other adult custodian with whom the child has been left by the parent is unwilling or unable to provide  care or support for the child and the whereabouts of the parent is unknown and reasonable efforts to locate him or her have been unsuccessful." (§ 361, subd. (c)(5).)

14

The finding necessary for removal in this case is identical to that for jurisdiction except for the increased burden of proof, i.e., clear and convincing rather than a preponderance. (Cf. §§ 361, subd. (c), 355, subd, (a).) Because of the confusion surrounding the jurisdictional findings, we are unable to determine whether substantial evidence would support removal. If, on remand the juvenile court again asserts jurisdiction over the minor, it can then make appropriate findings and orders for disposition. We note that should removal become necessary, the Department and the court will be constrained by the statutes and rules relevant to long-term placement and the choices will, as we have seen, be more limited than mother's choices for a short-term placement.

### DISPOSITION

The judgment is reversed and the matter is remanded to the juvenile court. The juvenile court is instructed to determine whether, based upon the facts currently in existence, a jurisdictional petition based upon section 300(g) can be properly pleaded and proved. If, after that determination, the court retains jurisdiction, the juvenile court must determine whether the tribes were properly noticed. If notice was proper, and there either was no response or the tribes determined that the minor is not an Indian child, the juvenile court shall then proceed to decide upon the appropriate disposition for the minor. However, if a tribe determines the minor is an Indian child and the court determines the ICWA applies to this case, the juvenile court is ordered to conduct the dispositional hearing in conformance with all provisions of the ICWA.

                                          BUTZ            , J.

We concur:

      ROBIE            , Acting P. J.

      MAURO         , J.

15