Filed 7/2/15  In re D.R. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re D.R., et al., Persons Coming Under the Juvenile Court Law. | B256826 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. DK00801) |
| Plaintiff and Respondent, | |
| v. | **ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING** [There is no change in judgment] |
| MIGUEL R., | |
| Defendant and Appellant. | |

GOOD CAUSE appearing, the opinion filed June 8, 2015, in the above entitled matter is hereby modified as follows:

1.      Page 11, third paragraph under section B delete the sentence which reads: "To be found a dependent under subdivision (b) of section 300, there must be clear and convincing evidence that:"

And replace it with the following sentence: "To be found a dependent under subdivision (b) of section 300, it must be shown by a preponderance of the evidence that:"

[end of modifications]

There is no change in judgment.

Petition for rehearing is denied.

_____

BIGELOW, P.J.                    RUBIN, J.                    GRIMES, J.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re D.R., et al., Persons Coming Under the Juvenile Court Law. | B256826 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. DK00801) |
| Plaintiff and Respondent, | |
| v. | |
| MIGUEL R., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Rudolph Diaz, Judge.  Reversed and remanded with directions.

Lori A. Fields for Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Jeanette Cauble , Deputy County Counsel.

_____

In April 2014, the juvenile court took dependency jurisdiction of six-year-old D.R. and four-year-old D. based on their exposure to reoccurring domestic violence between their custodial mother and stepfather. (Welf. & Inst. Code, § 300, subd. (b).)[1] Almost two months later, on May 28, 2014, the juvenile court sustained a section 342 subsequent petition alleging jurisdiction based on the failure of their non-custodial biological father, appellant Miguel R. (father), to protect the children from such domestic violence. Father appeals from the order sustaining the section 342 petition and the dispositional orders of that same day denying father's request to have D.R. and D. placed with him, and denying him reunification services. The Department of Children and Family Services (DCFS) concedes denying father reunification services was error. We agree with father that no substantial evidence supports assuming jurisdiction based on father's conduct. We therefore reverse and remand with instructions for the trial court to consider placing D.R. and D. with father pursuant to section 361.2.

## FACTUAL AND PROCEDURAL BACKGROUND

Father and mother lived in Washington state when they met. At the time, father was about 18 years old and mother was about 16 years old. Mother soon became pregnant with D.R., who was born in June 2007. They lived for a while with paternal grandparents and then with maternal grandparents. But in 2008, they moved to Los Angeles and lived there when daughter D. was born in July 2009. Father's name appears on D.R.'s and D.'s birth certificates. In December 2009, D.R. and D. remained with mother in Los Angeles and father returned to Washington after he discovered that mother was in an intimate relationship with Genaro L. (stepfather). Sometime in 2010, mother obtained a child support order against father. That same year, mother began living with

---

[1] All future undesignated statutory references are to the Welfare and Institutions Code.

2

stepfather and they had two children together: A. in March 2011 and N. in December 2012.**2** Mother told D.R. and D. that stepfather was their biological father.

Father was living in the state of Washington in 2010 when mother was hospitalized and stepfather arrested for domestic violence. But it appears the children did not come to the attention of DCFS until a November 2011 referral for general neglect and emotional abuse, which DCFS found substantiated. Mother and stepfather began participating in Voluntary Family Maintenance (VFM) services. In November 2012, another general neglect and emotional abuse referral against mother and stepfather was found substantiated. Nothing in the record suggests that DCFS ever contacted father to inform him of its involvement with his children. According to DCFS, in April 2013, the "Family Preservation case was successfully terminated because the family had met all the case plan goals." Two months later, in June 2013, father came to Los Angeles for two weeks and stayed with mother's brother. Mother and father dispute the purpose of this trip; father says he came for D.R.'s birthday but mother says father was an active gang member and came to hide from his enemies. It was on the occasion of this visit that mother revealed to D.R. and D. that father and not stepfather was their biological father. Father asked mother to return with him to Washington, but she refused. Mother also refused father's request that D.R. and D. visit him in Washington. Later, when father asked to come to Los Angeles and stay with mother and stepfather, mother refused because father had family in Bakersfield with whom he could stay.

In September 2013, D.R., D. and the half-siblings were detained as the result of an August 2013 domestic violence incident between mother and stepfather. On that occasion, the children were present when an argument about D.R. being late for school escalated into stepfather punching mother multiple times on the leg, then obtaining a

---

**2** We refer to A. and N. collectively as "the half-siblings;" and to D.R., D. and the half-siblings collectively as "the children." Mother, stepfather and the half-siblings are not parties to this appeal. Even though we reverse the juvenile court findings as to father's conduct, the juvenile court maintains jurisdiction over the children based on mother's and stepfather's conduct.

3

knife from the kitchen and trying to cut himself, then giving the knife to mother and trying to force her to cut him. Mother called the police.

According to the Detention Report, there were no relatives to consider for placement, father's whereabouts were unknown and DCFS could not "initiate a parent locator search" because the social worker did not know father's birthday. The children were briefly released to mother but detained again after DCFS learned that mother was allowing stepfather daily unmonitored access to the children in violation of court orders. The children remained in foster care throughout the remainder of these proceedings.

As sustained, a section 300 petition alleged the children had suffered serious physical harm as a result of ongoing domestic violence between mother and stepfather (paragraph a-1), mother had failed to protect the children from such domestic violence (paragraph b-1) and stepfather had mental and emotional problems about which mother knew but from which she failed to protect the children (paragraph b-2). Father was not named in the petition.

A few weeks after the children were detained, father was located living with his mother in Washington and working as an agricultural worker. In an October 29, 2013, telephone interview, father told the social worker that he had been sending mother between $200 and $500 each month until June 2013, when "DPSS [Department of Public Social Services] called me to say she was receiving cash aid and not to send money anymore." Father said mother had "anger problems" and had thrown the children's toys at him, but never hurt him; he heard that stepfather hits mother and once gave her a black eye. Father never filed for custody of D.R. and D. because he wanted to keep things "friendly" between himself and mother but "recently she told me that she was going to move away and I would never see my kids again so I'm thinking of filing now. I want to be involved in my kids' lives. They're my kids. *I would like to bring my kids over here with me*." (Italics added.)

In its report for the November 14, 2013 jurisdiction hearing, DCFS recommended that father be found to be D.R.'s and D.'s "presumed father" and that he receive reunification services. Although father was non-custodial and non-offending (there were

4

no allegations against him in the petition) and he had requested custody of D.R. and D., DCFS recommended that custody of all four children be placed with DCFS. The juvenile court continued the jurisdiction hearing to January 13, 2014, and set a Pre-Release Investigation (PRI) hearing for November 21, 2013. For that hearing, it ordered a supplemental report on placing D.R. and D. with father.

DCFS did not file a supplemental report but in a Last Minute Information For the Court filed on the day of the PRI hearing, it recommended against placing D.R. and D. with father for three reasons: (1) father could not come to Los Angeles to retrieve them, (2) DCFS was still waiting for criminal background information and (3) DCFS wanted to conduct an assessment of father's home in Washington. The juvenile court continued the PRI hearing to January 7, 2014, by which date DCFS was ordered to file a supplemental report on releasing D.R. and D. to father.

When the social worker interviewed D.R. and D. on December 19, 2013, they identified stepfather as their "father." Both children said they did not know who "Miguel [R.]" was, but then D.R. said, "I know him I don't visit him." They made similar statements in a follow-up interview five days later.

Father was also interviewed on December 19, 2013. He was surprised that D.R. and D. identified stepfather as their "father" since he had explained to them who he was when he saw them in June 2013. Father could not come to Los Angeles in order to establish a relationship with his children because he had nowhere to stay. Father said he wanted custody of D.R. and D. but the social worker thought he "sounded hesitant. [When the social worker asked father to explain his hesitancy, father] stated that he is currently residing in a two bedroom apartment with his mother. [The social worker] asked if this would be an issue for him. Father stated that he would like to secure his own housing for the children and needs assistance in order to accomplish this."

In a Last Minute Information For the Court filed on January 7, 2014, DCFS recommended an ICPC (Interstate Compact on the Placement of Children) be ordered to assess placement with father. At the hearing that day, the juvenile court found father to be the alleged father of D.R. and D. and continued the adjudication hearing to March 10,

5

2014.**3**  At the continued hearing, father was appointed counsel, who immediately requested a "presumed father" finding.  A hearing was set for April 4, 2014.  A few days before that hearing, father filed a written request seeking "presumed father" status and for immediate release of D.R. and D. to his custody pursuant to section 361.2 [placement with non-custodial parent] and *In re Abram L.* (2013) 219 Cal.App.4th 452, 461 [absent clear and convincing evidence of detriment, non-custodial and non-offending parent has constitutional right to custody of his or her child].

On April 4, 2014, the juvenile court sustained an amended section 300 petition, which included no allegations against father, and set the matter for disposition on April 25, 2014.  Hearing on father's "presumed father" request, which was opposed by mother and stepfather, was also continued to that date.  For that hearing, the juvenile court ordered DCFS to:  (1) interview mother regarding her concerns about releasing D.R. and D. to father; (2) conduct a criminal background check on father, including in Washington; (3) contact Child Protective Services in Washington to request a "courtesy visit and walkthrough" of father's home; (4) interview father to assess his ability and willingness to be D.R.'s and D.'s primary caretaker; (5) interview stepfather regarding his request to be found D.R.'s and D.'s presumed father; and (6) provide a supplemental report for the disposition hearing.**4**

For the continued hearing, DCFS reported that a representative of Washington's Child Protection services denied the social worker's request for a "courtesy walkthrough" of father's home; the Washington state representative suggested a formal ICPC be completed, but DCFS would not complete an ICPC request without a court order.  Mother told the social worker that father was an active gang member and involved in

---

**3**    As an "alleged" father, he did not have a right to appointed counsel or family reunification services, among other things.  (*In re J.H.* (2011) 198 Cal.App.4th 635, 644.)

**4**    The hearing was continued to April 24 but on that date it was continued to May 6, so that mother could provide D.'s birth certificate, which DCFS and mother believed would show father was not present at D.'s birth and did not sign her birth certificate.  As it turns out, the birth certificate proved the contrary.

6

drugs. During the two weeks he was in Los Angeles in June 2013, father saw D.R. and D. just twice. Mother confirmed that father had sent her money, but claimed it was between $50 an $100 on just four occasions. Although mother informed the social worker of father's visit to Los Angeles, his requests that mother return with him to Washington, that she send the children to visit him in Washington and that she allow father to stay with her on a subsequent visit, DCFS recommended no family reunification services for father based on his "lack of significant effort to visit with the children or provide them with the basic necessities of life." Father's "presumed father" request and disposition were continued to May 6, 2014.

On the day of the hearing, stepfather filed a competing "presumed father" request as to D.R. and D. In a Last Minute Information For The Court, DCFS reported that the social worker asked father to make himself available to be fingerprinted "in the event the state of Washington agrees to complete a courtesy visit or an ICPC is ordered . . . Father stated that he works and would not be able to make himself available for this to occur. [The social worker] asked father if he would be willing to come to Los Angeles to visit with the children and father stated that he worked and could not take time off, father further stated that he didn't have a place to stay while in Los Angeles. [The social worker] suggested a local hotel." The report concluded: "Placing the children D.R. and D. in [father's] home would be detrimental to their emotional health and well being." Hearing on the competing "presumed father" requests and disposition was continued to May 28, 2014.

A few weeks before the continued hearing, DCFS filed a section 342 petition which, for the first time, contained allegations against father. As sustained, paragraph b-1 of that petition alleged D.R. and D. were persons described by section 300, subdivision (b) as a result of father's "unresolved history of being absent from the children's lives, which created a situation where the children do not want to reside with their father and do not identify him as their father. The father has not ensured that the children are in a safe home environment and has not monitored their care, which resulted in the children being exposed to domestic violence between their mother and [stepfather]. Such failure to

7

provide for the children on the part of [father] endangers the children's physical and emotional health, safety and well being and places the children at risk of physical and emotional harm and damage."[5]  Father denied the allegations.

Mother was the only witness at the May 28, 2014 hearing on the section 342 petition.  She testified that she moved from Washington to California with D.R. to get away from father, who was involved in a gang, but father followed them.  When father came to Los Angeles in mid-2013, he stayed with mother's brother.  Father told mother he came to "hide" from his enemies.  During the time father was in town, mother brought D.R. and D. to see him about eight times.  The last communication mother had with father was in July 2013, when she told him that D. was in the hospital and he got angry because she did not tell him sooner.  Although she eventually told them he was their father, D.R. and D. did not want to see father because they did not know who he was; they identified stepfather as their "father" because he had raised them.  After mother and father separated, she did not give father her address but she texted him her phone number.  In argument, mother, stepfather and DCFS opposed "presumed father" status for father.  The children's counsel urged that both father and stepfather be found D.R.'s and D.'s "presumed father."  Father's counsel had no objection to naming both men presumed fathers.  The juvenile court found both father and stepfather to be D.R.'s and D.'s "presumed father" but ordered no reunification services for father, reasoning that only one presumed father was entitled to reunification services because the children "can only be reunified with one family."[6]

---

[5]  An allegation that father had left D.R. and D. without provision for support (§ 300, subd. (g)) was dismissed and language to that effect was deleted from paragraph b-1.

[6]  The court was apparently referring to Family Code section 7612, subdivision (c), which provides:  "In an appropriate action, a court may find that more than two persons with a claim to parentage under this division are parents if the court finds that recognizing only two parents would be detrimental to the child."  (See also *V.S. v. M.L.* (2013) 222 Cal.App.4th 730 [" 'Although more than one individual may fulfill the statutory criteria that give rise to a presumption of paternity, "there can be only one presumed father." (Citations.)' [Citation.]  If more than one man meets the criteria

After resolving the presumed father issue, the juvenile court sustained paragraph b-1 of the section 342 petition observing: "I do think the children were exposed to the conditions described, the domestic violence, and that the children were entitled to father's protection and father's supervision, and by his lack of involvement in checking on the welfare of the children, that he did fail in his role and responsibility as a parent."

Regarding disposition, father's counsel argued that D.R. and D. should be immediately returned to father's custody pursuant to section 361.2. Mother and stepfather sought reunification services for themselves as to all four children, but opposed any reunification services for father. The children's counsel urged reunification services for mother as to all four children, for father as to D.R. and D. and for stepfather as to only the half-siblings. The juvenile court placed the children with DCFS for suitable placement. It gave stepfather, not father, reunification services as to all four children, observing: "I think it would be confusing to the children and it would also be detrimental to remove the children from their siblings, as well as to remove the children from the mother, who has been with them all their lives, especially to send them up to Washington where they have no ties, they have no history, or at least a known history to them." Father was given monthly, two-hour, monitored visits. Father timely appealed.

## DISCUSSION

### A. *Father's Appeal Raises Justiciable Issues*

DCFS contends father's appeal should be dismissed. It argues the appeal raises no justiciable issue because father does not challenge the jurisdictional findings relating to mother and stepfather. We disagree.

"It is a fundamental principle of appellate practice that an appeal will not be entertained unless it presents a justiciable issue. [Citation.]" (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1490.) An important requirement for justiciability is the

giving rise to the rebuttable presumption of fatherhood, the court must determine which of the men's presumption 'on the facts is founded on the weightier considerations of policy and logic.' (§ 7612, subd. (b)) [footnote omitted][citations.]".)

9

availability of effective relief.  (*Ibid*.)  The application of the doctrine in dependency cases was aptly explained by the court in *I.A.*:  "As a result of [the dependency scheme's] focus on the [best interests of the] child, it is necessary only for the court to find that one parent's conduct has created circumstances triggering section 300 for the court to assert jurisdiction over the child.  [Citations.]  Once the child is found to be endangered in the manner described by one of the subdivisions of section 300 . . . the child comes within the court's jurisdiction, even if the child was not in the physical custody of one or both parents at the time the jurisdictional events occurred.  [Citation.]  For jurisdictional purposes, it is irrelevant which parent created those circumstances.  A jurisdictional finding involving the conduct of a particular parent is not necessary for the court to enter orders binding on that parent, once dependency jurisdiction has been established.  [Citation.]  As a result, it is commonly said that a jurisdictional finding involving one parent is ' "good against both.  More accurately, the minor is a dependent if the actions of either parent bring [him] within one of the statutory definitions of a dependent." '  [Citation.]  For this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence.  [Citations.]"  (*Id*. at p. 1491.)

Nevertheless, it is equally well settled that the appellate courts have discretion to "reach the merits of a challenge to any jurisdictional finding when the finding (1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) 'could have other consequences for [the appellant], beyond jurisdiction' [citation]."  (*In re Drake M*. (2012) 211 Cal.App.4th 754, 762-763.)  In *Drake M.*, the appellate court elected to reach the merits of a father's appeal explaining: "the outcome of this appeal is the difference between father's being an 'offending' parent versus a 'non-offending' parent.  Such a distinction may have far reaching implications with respect to future dependency proceedings in this case and father's parental rights.  Thus, although dependency jurisdiction over Drake will remain

in place because the findings based on mother's conduct are unchallenged, we will review father's appeal on the merits."

Here, as in *Drake M.*, the outcome of this appeal is the difference between father's being an "offending" parent versus a "non-offending" parent. That distinction has implications for father's desire to obtain custody of D.R. and D. (See *In re Christopher M.* (2014) 228 Cal.App.4th 1310, 1317 [A "jurisdictional finding based on conduct of a noncustodial parent would unquestionably be a consideration in assessing detriment under section 361.2, subdivision (a). [Citation.]"].) For this reason, we exercise our discretion to review father's appeal on the merits.

B.      *Insufficient Evidence Supports the Order Sustaining the Section 342 Petition Against Father*

Father contends the order sustaining the section 342 petition is not supported by substantial evidence. The gist of his argument is that jurisdiction was based on father not protecting D.R. and D. from the domestic violence between mother and stepfather because father was not sufficiently involved in his children's lives, but father's absence was not the cause of the domestic violence committed by stepfather. We agree.

The substantial evidence test is well known: " 'To be sufficient to sustain a juvenile dependency petition the evidence must be " 'reasonable, credible, and of solid value' " such that the court reasonably could find the child to be a dependent of the court by clear and convincing evidence. [Citation.] A mere 'scintilla' of evidence is not enough.' [Citation.]" (*In re B.T.* (2011) 193 Cal.App.4th 685, 691.)

To be found a dependent under subdivision (b) of section 300, there must be clear and convincing evidence that: "The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . the willful or negligent failure of the child's parent . . . to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left . . . . The child shall continue to be a dependent child pursuant to this subdivision only so long as is necessary to protect the child from risk of suffering serious physical harm or illness."

11

Thus, jurisdiction under section 300, subdivision (b) has three elements: (1) neglectful conduct by the parent (2) causation and (3) serious physical harm or illness, or a risk of such. (*In re B.T., supra*, 193 Cal.App.4th at p. 692.) The "risk of serious physical harm or illness . . . must exist at the time of the adjudication hearing. [Citation.]" (*In re Christopher M., supra*, 228 Cal.App.4th at p. 1318.)

Section 300, subdivision (b) jurisdiction cannot be based on emotional harm. "As appellate courts have repeatedly stressed, ' "[s]ubdivision (b) means what it says. Before courts and agencies can exert jurisdiction under section 300, subdivision (b), there must be evidence indicating that the child is exposed to a substantial risk of *serious physical harm or illness*." ' [Citations.]" (*In re Jesus M.* (2015) 235 Cal.App.4th 104, 111, italics added.) A parent's bad behavior, even if that behavior causes family trauma, does not support jurisdiction where the parent "presents no obvious threat to the children's physical safety." (*Ibid.*)

The willful or negligent conduct alleged by the section 342 petition in this case is father's "absence from the children's lives" and "failure to monitor their care" while they were in mother's custody. The petition alleges this conduct caused three types of "serious physical harm:" (1) D.R.'s and D.'s failure to identify father as their father, (2) their lack of desire to live with father and (3) their exposure to domestic violence between mother and stepfather. The first two are easily dispensed with. Evidence that D.R. and D. do not identify father as their "father" and that they do not want to live with father is not sufficient to support jurisdiction under section 300, subdivision (b) because, even if true, neither fact constitutes *physical* harm. (See *In re Jesus M., supra*, 235 Cal.App.4th at p. 111.) We turn next to the evidence that D.R. and D. were exposed to domestic violence, the third type of harm alleged in the petition.

It is well settled that exposure to reoccurring domestic violence is sufficient to support dependency jurisdiction under section 300, subdivision (b). (*In re T.V.* (2013) 217 Cal.App.4th 126, 134; *In re E.B.* (2010) 184 Cal.App.4th 568, 576 [" 'Domestic violence in the same household where the children are living . . . is a failure to protect the children from the substantial risk of encountering the violence and suffering serious

12

physical harm or illness from it.' [Citation.]"].) But this is not the usual case in which section 300, subdivision (b) jurisdiction is based on a custodial parent failing to protect a child from domestic violence occurring in the home. Rather, this case presents the novel issue of whether the conduct and causation elements of section 300, subdivision (b) are met by evidence that an out-of-state, non-custodial parent failed to take action to protect his or her children from domestic violence occurring in the custodial home. Even if such conduct can constitute "willful or neglectful" conduct within the meaning of section 300, subdivision (b) under some circumstances, we conclude that the evidence does not show a causal nexus between father's absence and stepfather's domestic violence in this case. For this reason, the evidence was insufficient to establish jurisdiction under section 300, subdivision (b) based on father's conduct. We take guidance from two cases: *In re J.O.* (2009) 178 Cal.App.4th 139 and *In re Aaron S.* (1991) 228 Cal.App.3d 202.

The sufficiency of the evidence to support dependency jurisdiction for the father's failure to support under both subdivisions (b) and (g) of section 300 was the issue in *J.O.* The father in that case left the mother and three small children behind when he moved to Missouri for work in 1996. From 1996 until 2000, the father sent the mother about $500 each month. When the father asked mother to join him in Missouri, she refused because she had become involved with one Carlos. The father eventually moved to Mexico and lost contact with his children. The children were teenagers when they were detained in 2008 as a result of sexual abuse by Carlos. The appellate court found insufficient evidence supported jurisdiction under section 300, subdivision (b) based on the father's conduct because there was no "causal connection" between the injuries suffered by the children and the father's abandonment. (*In re J.O., supra*, 178 Cal.App.4th at p. 152.)

The *J.O.* court did not elaborate on the meaning of "causal connection." But our Supreme Court recently discussed the meaning of "caused" in the context of section 300, subdivision (f), pursuant to which dependency jurisdiction may be based on a parent causing the death of another child through abuse or neglect: "One's wrongful acts or omissions are a legal cause of injury if they were a substantial factor in bringing it about. [Citation.] If the actor's wrongful conduct operated concurrently with other

13

contemporaneous forces to produce the harm, it is a substantial factor, and thus a legal cause, if the injury, or its full extent, would not have occurred but for that conduct. Conversely, if the injury would have occurred even if the actor had not acted wrongfully, his or her conduct generally cannot be deemed a substantial factor in the harm. [Citations.]" (*In re Ethan C.* (2012) 54 Cal.4th 610, 640.)

We turn next to *Aaron S.*, which deals with jurisdiction under section 300, subdivision (g) [failure to maintain], not subdivision (b) [failure to protect]. The father was incarcerated when Aaron S. was detained from the mother based on her drug use, among other things. But dependency jurisdiction was ultimately based only on the father's alleged failure and inability to make appropriate arrangements for the child's care under section 300, subdivision (g). On appeal, the respondent agency argued the father's "inability to arrange for [the child's] care is demonstrated by his failure to do so despite his awareness, through the family's involvement in [a sibling's] dependency case, that [the child's] care was 'minimal at best' and, through petitions and reports in the two dependency cases, that his children's situation was worsening." (*In re Aaron S.*, *supra,* 228 Cal.App.3d at p. 209.) Unpersuaded, the appellate court reversed the jurisdictional finding, reasoning: "We are reluctant to charge appellant with awareness of the need for alternate caretaking arrangements when the court and [respondent agency] saw fit to leave [the child] in the mother's custody . . . despite pendency of the petition . . . . There is no indication in the record that appellant was aware of the circumstances surrounding the January 13, 1989, removal of the children from the mother's custody." (*Ibid.*)

When the serious physical harm alleged to support dependency jurisdiction under section 300, subdivision (b) is exposure to reoccurring domestic violence in the child's home and the wrongful conduct is a non-custodial parent's absence in the child's life, *Ethan C.*, *Aaron S.* and *J.O.*, support the rule that there must be a showing that the child would not have been exposed to such harm but for the non-custodial parent's absence; if the harm would have occurred even if the non-custodial parent had been more involved with the child, the non-custodial parent's absence cannot be deemed a substantial factor in the harm that befell the child. Here, like the court in *Aaron S.*, we are reluctant to fault

14

father, an out-of-state and non-custodial parent, for failing to discover domestic violence occurring between the custodial mother and stepfather and make alternate caretaking arrangements when DCFS left the children in mother's and stepfather's care while the family received Voluntary Maintenance services from 2011 until 2013. Even after the domestic violence became so pronounced that the children were detained, the juvenile court released the children to mother until her violation of court orders was discovered. On this record, there is insufficient evidence that father's lack of contact with D.R. and D. caused them to be subjected to reoccurring domestic violence in mother's home any more than the failure of DCFS to remove them sooner was the cause. For this reason, the order sustaining the section 342 petition must be reversed.

## C.     *Father is Entitled to Placement Consideration*

As already mentioned, DCFS concedes that father is entitled to reunification services. In addition, since his first conversation with a social worker, father has sought custody of D.R. and D. On appeal, he reiterates that they should be placed with him pursuant to section 361.2, subdivision (a). We conclude that the dispositional order denying father's request for custody of D.R. and D. should be reconsidered in light of our reversal of the order sustaining the section 342 petition. Father has now been determined to be a non-custodial, non-offending parent.

" ' "A parent's right to care, custody and management of a child is a fundamental liberty interest protected by the federal Constitution that will not be disturbed except in extreme cases where a parent acts in a manner incompatible with parenthood." [Citation.]' [Citation.]" (*In re C.M.* (2014) 232 Cal.App.4th 1394, 1400, citing *In re Abram L., supra,* 219 Cal.App.4th at p. 461.) A non-custodial, non-offending parent has both a constitutionally and a statutorily protected interest in assuming physical custody "in the absence of clear and convincing evidence that the parent's choices will be 'detrimental to the safety, protection, or physical or emotional well-being of the child.' " (*In re Isayah C.* (2004) 118 Cal.App.4th 684, 697.) To comport with due process, the detriment finding must be made under the clear and convincing evidence standard, which

15

requires "a high degree of probability, such that the evidence is so clear as to leave no substantial doubt." (*In re C.M.,* at p. 1401.)

"While the child's wishes, sibling bonds and the child's relationship with the noncustodial parent may be considered by the juvenile court in determining whether placement of a dependent child with a noncustodial, non-offending parent would be detrimental to the child's physical or emotional well-being, none of these factors is determinative. [Citations.]" (*In re C.M., supra*, 232 Cal.App.4th at p. 1402 [14 year old's wish to remain in the only home she had ever known, lack of an established relationship with father, and bond with sibling were insufficient to constitute detriment].)

In this case, father was a non-custodial parent seeking custody at the May 28, 2014 hearing. As a result of our reversal of the order sustaining the section 342 petition, he was also non-offending. As such, he had both a constitutionally and statutorily protected interest in assuming physical custody of D.R. and D. in the absence of clear and convincing evidence that his parental choices would be detrimental to their "safety, protection, or physical or emotional well-being." (*C.M., supra*, 232 Cal.App.4th at p. 1401; *Abram L., supra*, 219 Cal.App.4th at p. 461.) The juvenile court did not make any express finding under section 361.2, subdivision (a). It did, however, state: "[I]t would also be detrimental to remove the children from their siblings, as well as to remove the children from the mother, who has been with them all their lives, especially to send them up to Washington where they have no ties, they have no history, or at least a known history to them." Even assuming the juvenile court made these findings under the clear and convincing standard, they are insufficient to support denying father custody. The fact that D.R. and D. had "no ties" and no "known history" in Washington was not a sufficient ground to deny father his constitutional right to custody. Further, to the extent the finding of detriment was based on removal of D.R. and D. from their mother and the half-siblings, they were in foster care, not with their mother at the time of the hearing, and one of the half-siblings was in a different home.

Our conclusion that the May 28, 2014 disposition order was not supported by substantial evidence is based on the facts extant on the day of the hearing, which we have

16

determined from the record on appeal. At the dispositional hearing following our remand, the juvenile court may, of course, take into account circumstances and events that have taken place subsequent to the May 28 hearing.

## DISPOSITION

The May 28, 2014 order sustaining the section 342 petition based on father's alleged conduct and denying father reunification services is reversed, as is the dispositional order placing D.R. and D. with DCFS for suitable placement and denying father reunification services. The matter is remanded to the juvenile court for a new dispositional hearing as to D.R. and D. at which the court must consider placement with father pursuant to section 361.2, subdivision (a). We express no opinion on a proper dispositional order, except that father, as a presumed father, is entitled to reunification services.


                                             RUBIN, J.
WE CONCUR:


        BIGELOW, P. J.


        GRIMES, J.