Filed 1/5/24; certified for publication 1/30/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re R.M., a Person Coming Under the Juvenile Court Law. | B327716 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>B.S.,<br><br>  Defendant and Appellant. | Los Angeles County Super. Ct. No. 22CCJP04816A |

  APPEAL from orders of the Superior Court of Los Angeles County, Stephen C. Marpet, Juvenile Court Referee. Reversed.

  Katie Curtis, under appointment by the Court of Appeal, for Defendant and Appellant.

  Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

# INTRODUCTION

Brittany S. (mother) appeals the court's findings that there was jurisdiction under Welfare and Institutions Code[1] section 300, subdivisions (b)(1) and (g), based on her incarceration, and its dispositional orders. No evidence was presented that mother or R.M., Sr. (father)[2] abused or neglected the minor, R.M. (born October 2021), or that they had any debilitating mental impairment or substance abuse problems. Rather, the court exercised jurisdiction over R.M. because mother and father were arrested on murder charges and did not make prior arrangements for R.M.'s care. We conclude that the court's order was not supported by substantial evidence because there was neither any allegation nor evidence that the parents were unable to arrange for care of R.M. during their incarceration. We therefore reverse and vacate the jurisdictional findings and dispositional orders.

## FACTS AND PROCEDURAL BACKGROUND

On December 8, 2022, a car containing mother, father, and R.M. was stopped after it made an illegal U-turn. Police officers determined that both mother and father have felony warrants for murder and took them into custody. Officers also booked the child and then released him to the Los Angeles County Department of Children and Family Services (Department). Father provided

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

[2] Father is not a party to the appeal.

officers the name of paternal grandfather, whom he stated would be willing to assume care of R.M.

A social worker arrived at the station and observed the child, who appeared to be calm and comfortable. He was appropriately dressed and had no visible marks or bruises. The social worker was permitted to speak with the parents concerning the child's needs, but nothing else due to the nature of the criminal charges. Mother told the social worker that she also had an older child, N.G. (R.M.'s half-sister), who lived with paternal uncle and paternal grandmother.[3] Mother provided information about R.M.'s health and routines. The social worker informed mother that, due to her being incarcerated, the child would be taken into protective custody and informed her of the date of the detention hearing. The social worker told father the same.

The following day, the social worker spoke with paternal grandfather, who reported that he was interested in caring for R.M. The social worker requested the information for all adults in the home, including valid identification.

The Department filed a section 300 petition under subdivisions (b) and (g), alleging that there was a substantial risk that R.M. would suffer serious physical harm or illness as a result of parents' failure to supervise or protect him due to their arrest for murder (count b-1) and that R.M. had no parent to provide care, supervision, and the necessities of life because his parents were arrested for murder (count g-1).

---

[3] According to the detention report, mother initially stated that N.G. lived with paternal grandmother and paternal grandfather. It was later clarified that paternal grandmother lived with paternal uncle.

On December 13, 2022, the court detained R.M. In a last minute information filed with the court on December 16, 2022, the Department reported that maternal grandmother had called and stated that she would like R.M. to be placed with her. She reported that N.G. would go back and forth between her house and paternal grandmother's home. Maternal grandmother denied any history of domestic violence, substance abuse, mental health, or law enforcement coming to the home and stated that her partner had a criminal history that was more than 10 years old. The social worker also spoke with paternal grandmother, who stated that she resides in a 3-bedroom home with her adult son, the paternal uncle. She reported that she and paternal grandfather had been divorced for several years. Paternal grandmother stated that she would like R.M. released to her and that she had been caring for him since he was born. She reported that "most of her grandchildren have been raised by her as she provides a safe and stable home environment for the children." She stated that N.G. goes to visit her maternal grandmother but preferred to stay with paternal grandmother. The paternal grandmother stated that her last arrest was in 2005 and denied any criminal history for herself or paternal uncle. A CLETS search for paternal grandmother "came back: 'Hit' " but no crime or arrests were identified in the report.

At a hearing on December 16, 2022, counsel for R.M. requested that he be placed with paternal grandmother. The court ordered that R.M. be placed with paternal grandmother over the objection of the Department.

In the jurisdiction/detention report, the Department noted that N.G. was not included in the petition "as it was later discovered that she was in the home of [paternal grandmother]."

A social worker spoke with N.G., who reported that she had been living with paternal grandmother for approximately six years. She reported that the household consisted of R.M., paternal grandmother, and paternal uncle and stated that mother and father lived in Las Vegas but left N.G. with paternal grandmother so she could be closer to cousins, aunts, and uncles. She stated that R.M. mainly lived with mother and father, but " 'they would stay a couple weeks here and then go back.' " N.G. reported that she spoke with mother every day. N.G. stated that she would prefer to stay with paternal grandmother over her maternal grandparents.

A social worker confirmed that mother was still incarcerated in San Joaquin County Jail with no release information. Concerning the allegations of the petition, mother stated: " 'That is just accusations, because right now I am innocent until proven guilty. Right now I have to go through the legal motions to see if I can qualify for bail.' " Mother stated that there was no official document or power of attorney granting paternal grandmother custody of R.M. or N.G., but that she wanted to create a notarized letter in which temporary legal custody could be established for paternal grandmother only while mother was incarcerated. Mother expressed interest in receiving reunification services and participating in court ordered services. She reported drinking alcohol once a year and denied using drugs. Father declined to comment on the allegations of the petition until he was appointed an attorney. Father reported that he was comfortable with paternal grandmother caring for R.M. and that he wanted to reunify with his son. Father reported having a great relationship with the paternal grandparents and denied ever being exposed to domestic violence, alcohol, or drugs

in his parent's home. Father stated that he drinks socially and denied using drugs.

Paternal grandmother reported that the parents call her daily. She expressed that she was willing and able to care for R.M. and N.G. and was willing to adopt them or become their legal guardian.

In January and February of 2023, the court arraigned mother and father and appointed counsel for them.

The court held the jurisdiction/disposition hearing on February 27, 2023. Counsel for mother sought dismissal of both allegations, arguing: "Number 1, the arrest is not jurisdictional. Number 2, an appropriate plan was made with paternal grandmother now taking care of the child. The child is no longer at risk of harm." Counsel for father joined this argument. The court stated: "Mere fact that we were able to place the child with a relative is not the way the plan works. It's a plan ahead of it." The court found that the petition was supported by a preponderance of the evidence and sustained both allegations. The court further found that there was no reasonable means of protecting R.M. short of removal. The court ordered family reunification services for mother and father as well as visitation.[4]

_____

[4] The court also stated that, because the parents were jailed in San Joaquin County and paternal grandmother also resided in Northern California, it was the court's intent to transfer the case to San Joaquin County. On appeal, the Department seeks to establish that the case was transferred to San Joaquin County via attachments to its respondent's brief. We may take judicial notice of court records outside the record on appeal (Evid. Code, §§ 459, subd. (a) & 452, subd. (d)), but "a litigant must demonstrate that the matter as to which judicial notice is sought is both relevant to and helpful toward resolving the matters before this court. [Citation.]" (*Deveny v. Entropin, Inc.* (2006)

Mother timely appealed.

## DISCUSSION

Mother contends that the court erred in sustaining the petition on the ground that the parents were incarcerated without finding that the parents were mentally or physically incapable of arranging for R.M.'s care by a relative. The Department contends that jurisdiction was necessary for R.M.'s placement with paternal grandmother "to have legal effect, and for R.M. to be protected from lacking parental support and being at substantial risk of suffering serious physical harm."

" 'In reviewing the jurisdictional findings and the disposition, we look to see if substantial evidence, contradicted or uncontradicted, supports them. [Citation.] In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.' [Citations.]" (*In re R.T.* (2017) 3 Cal.5th 622, 633.) However, we note that the Department had the burden of proof as to each fact necessary to sustain the jurisdictional petition, and that mother "was not required to demonstrate anything" and could prevail "without making any factual showing at all." (*In re S.D.* (2002) 99 Cal.App.4th 1068, 1078 (*S.D.*).)

_____

139 Cal.App.4th 408, 418.) The Department made no attempt to satisfy these requirements in its brief. Thus, we decline to take judicial notice of the attachments.

1. **Substantial evidence does not support the court's exercise of jurisdiction.**

The court sustained the petition under section 300, subdivisions (b)(1) and (g). "A juvenile court may determine that a child is subject to the court's jurisdiction under section 300, subdivision (b)(1) if it finds by a preponderance of the evidence that '[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child,' the willful or negligent failure of the parent to provide the child with adequate food, clothing, shelter, or medical treatment, or the inability of the parent to provide regular care for the minor due to the parent's mental illness, developmental disability or substance abuse. [Citation.]" (*In re Joaquin C.* (2017) 15 Cal.App.5th 537, 560–561.)

"Section 300, subdivision (g), authorizes the juvenile court to adjudge a minor a dependent child of the court where 'the minor's parent has been incarcerated or institutionalized and cannot arrange for the care of the minor . . . .' [Citation.] The careful analysis found in *In re Aaron S.* (1991) 228 Cal.App.3d 202 provides an authoritative interpretation of the statutory language. The court concluded that '[t]he use of the present tense verb in the statute, "cannot arrange," indicates that the circumstances justifying the dependency must exist at the time of the hearing. [Citations.] Accordingly, section 300, subdivision (g) applies when, at the time of the [jurisdictional] hearing, a parent has been incarcerated and does not know how to make, or is physically or mentally incapable of making, preparations or plans for the care of his or her child.' [Citation.]" (*In re Monica C.* (1995)

8

31 Cal.App.4th 296, 304–305.) "Put another way, 'neither incarceration alone nor the failure to make an appropriate advance plan for the child's ongoing care and supervision is sufficient to permit the exercise of jurisdiction under subdivision (g).' [Citation.] Moreover, '[n]othing in section 300, subdivision (g) even requires an incarcerated parent . . . to prove affirmatively the suitability of [his or] her caretaking arrangements. It requires only that [he or] she be able to make the arrangements.' [Citation.]" (*In re M.R.* (2017) 7 Cal.App.5th 886, 897 (*M.R.*).)

Without more, a parent's inability to care for or financially support a child personally due to incarceration is not grounds for dependency jurisdiction under subdivisions (b)(1) or (g). (See, e.g., *In re Noe F.* (2013) 213 Cal.App.4th 358, 366 [holding, under subd. (b), that "incarceration, without more, cannot provide a basis for jurisdiction"]; *In re Monica C.*, *supra*, 31 Cal.App.4th at p. 305 [subd. (g) "requires only that an incarcerated parent arrange adequately for the care of the child during the period of his or her incarceration"]; *S.D.*, *supra*, 99 Cal.App.4th at p. 1077 ["[t]here is no 'Go to jail, lose your child' rule in California"]; *In re Andrew S.* (2016) 2 Cal.App.5th 536, 542 ["Neither [section 300, subdivision (b) nor subdivision (g)] justifies the juvenile court's assumption of jurisdiction over an otherwise well-cared-for child simply because an absent parent has not provided support."].)

Mother contends that *S.D.*, *supra*, 99 Cal.App.4th 1068 is instructive and supports reversal. In *S.D.*, the mother left the two-year-old minor with a relative when she went out to dinner. (*Id.* at p. 1071.) The relative was arrested and police took the minor into custody. (*Id.* at p. 1072.) The next day the mother was arrested. (*Ibid*.) The petition alleged mother was incarcerated

and neither parent was available to care for the minor, but there was no allegation or evidence that the mother was unable to arrange for the child's care during her incarceration. (*Id.* at p. 1071.) In fact, the record "strongly suggest[ed] that [the mother] had several options for care of [the minor] during her incarceration." (*Ibid*.) The minor was placed with a maternal aunt after the detention hearing and again after the 12-month review hearing. (*Id.* at pp. 1072–1073, 1075–1076.) The trial court dismissed the section 300, subdivision (b) allegations, leaving section 300, subdivision (g) as the sole basis for jurisdiction. (*S.D.,* at p. 1074.)

In assessing mother's claim of ineffective assistance of counsel for failing to assert a defense to section 300, subdivision (g), the Court of Appeal found it was "irrelevant that [the mother] had not already arranged for [the minor]'s care at the time of her incarceration." (*S.D., supra*, 99 Cal.App.4th at p. 1077.) It held that the issue under section 300, subdivision (g), is whether the parent could arrange for care, not whether the parent had done so, and that the Orange County Social Services Agency (SSA) had the burden of proof and was required to establish that the parent could not arrange for care. (*S.D.*, at p. 1078.) On the record before it, the court had "no problem concluding that SSA failed to sustain its factual burden." (*Ibid*.) The court emphasized that, under the statute, the parent is not required to affirmatively prove the caretaking arrangements are suitable. (*Id.* at p. 1079.) The statute requires only that the parent is able to make the arrangements and, if the agency wishes to challenge the suitability of the arrangement, it must proceed under another of the clauses in section 300, subdivision (g). (*S.D.*, at p. 1079.)

In contrast, the Department contends that the court's exercise of jurisdiction was appropriate under *In re Athena P.* (2002) 103 Cal.App.4th 617 (*Athena P.*). In *Athena P.*, the mother challenged the sufficiency of the evidence to support jurisdiction under section 300, subdivision (g). The parents were arrested and several months later, while in custody, the mother gave birth to Athena and sent her to live with the grandparents. (*Id.* at pp. 621–622.) The mother attempted to create a formal custody arrangement, but the documents were never filed and the specifics of the arrangement were not known. (*Ibid.*) In finding substantial evidence supported the jurisdictional finding, the court observed that the mother had tried and failed to make the grandparents temporary legal guardians and never made any further effort to complete an arrangement for care of Athena. (*Id.* at p. 629.) The failure left the grandparents with no legal authority to consent to medical treatment, authorize vaccinations, enroll the child in daycare or prove they were entitled to her custody should that prove necessary; thus, the mother was, and remained, unable to arrange for the minor's care. (*Ibid.*) The court in *Athena P.* contrasted the circumstances before it from those present in *S.D.*, *supra*, 99 Cal.App.4th 1068, because "the social worker [in *S.D.*] conceded that the mother's failure to give the babysitter a medical consent form, when she thought she was just going out to dinner, was not a basis for jurisdiction" and "the mother had never tried to give her sister legal custody; the dependency had intervened, making it unnecessary to do so." (*Athena P.*, at p. 630.) Thus, in *S.D.*, "there was every reason to assume [the mother] could still make appropriate custody arrangements." (*Athena P.*, at p. 630.)

11

We agree with mother that the circumstances of this case are more similar to *S.D.* than they are to *Athena P.* In *Athena P.*, the mother was incarcerated for months before she gave birth and had time to make appropriate arrangements for the child's care. Indeed, the mother had made attempts to create a formal custody arrangement but failed to file the paperwork. Here, the parents were arrested after a traffic violation and, upon their first interaction with the Department, were informed that the Department was taking R.M. into protective custody due to their incarceration. The record does not indicate that mother or father had any opportunity to attempt to arrange for R.M.'s care before the Department intervened. As in *S.D.*, and unlike in *Athena P.*, "the mother had never tried to give [paternal grandmother] legal custody [of R.M.]; the dependency had intervened, making it unnecessary to do so." (*Athena P., supra*, 103 Cal.App.4th at p. 630.) Moreover, as in *S.D.*, the record establishes that mother and father had multiple family members willing to assume care of R.M., including paternal grandmother, who was already caring for R.M.'s half-sister, and with whom R.M. was later placed.[5] (See *S.D., supra*, 99 Cal.App.4th at p. 1071 [finding that mother had

---

[5] Although the Department argues on appeal that, absent jurisdiction, paternal grandmother "would not be legally obligated to continue providing care to R.M.[,]" it did not amend the petition to include N.G., even though paternal grandmother also does not have legal guardianship over her. This undermines any claim that the Department had concerns about paternal grandmother's reliability. There is no basis in the record to conclude that paternal grandmother is not reliable or that R.M. is at risk of abandonment absent the court's exercise of jurisdiction. Paternal grandmother cared for N.G. for approximately six years and expressed a strong interest in caring for R.M. as well.

ineffective assistance of counsel where her attorney agreed that section 300, subd. (g) applied even though "the record . . . strongly suggest[ed] that [the mother] had several options for care of [the minor] during her incarceration"].)

Further, as in *S.D.*, the Department "pleaded and proved only that [mother] had been incarcerated, but not that she was *unable to arrange for care of*" R.M. (*S.D.*, *supra*, 99 Cal.App.4th at p. 1077.) The petition here alleged, with respect to both section 300, subdivisions (b)(1) and (g): "The child, [R.M.], has no parent to provide care, supervision and the necessities of life . . . in that the child's mother . . . and father. . . were arrested on 12/08/22 for PC 187 (Murder)." The Department did not allege that either parent was incapable of *arranging* for the provision of care, supervision, and the necessities of life for R.M. We have been unable to find evidence in the record supporting that the parents were physically or mentally unable to make appropriate custody arrangements for R.M., nor does the Department identify any such evidence on appeal. Indeed, even after the Department's intervention, which rendered such efforts "unnecessary" (*Athena P.*, *supra*, 103 Cal.App.4th at p. 630), mother considered how to make paternal grandmother's guardianship of the children during her incarceration legally binding. The record further indicates that, despite her incarceration, mother spoke with the paternal grandmother and N.G. daily, which undermines any inference that mother was uninterested in her children or unwilling or unable to arrange for their care. (Compare *M.R.*, *supra*, 7 Cal.App.5th at p. 897 [no substantial evidence supported finding that incarcerated father did not or could not plan for the care of children under § 300, subd. (g), where "he took an interest in them, and attempted to provide for them to some degree from

13

prison"] with *In re James C.* (2002) 104 Cal.App.4th 470, 484 [upholding jurisdiction under § 300, subd. (g), and finding lack of evidence incarcerated father ever showed interest in or attempted to care for children sufficient for juvenile court to infer that he was unable or unwilling to arrange for care].)

In sustaining the petition, the juvenile court stated, "the mere fact we were able to place with a relative is not the way the plan works. It's a plan ahead of it." Contrary to the court's statement, the law provides that " 'neither incarceration alone *nor the failure to make an appropriate advance plan for the child's ongoing care and supervision* is sufficient to permit the exercise of jurisdiction under subdivision (g).' [Citation.]" (*M.R.*, *supra*, 7 Cal.App.5th at p. 897, italics added; accord, *S.D.*, *supra*, 99 Cal.App.4th at p. 1077 [that mother had not already arranged for the minor's care at the time of her incarceration was "irrelevant" to determining whether exercise of jurisdiction under section 300, subd. (g) was appropriate].)

In sum, we conclude that the Department did not carry its burden below of demonstrating that something more than the mere fact of the parents' incarceration supported jurisdiction under section 300, subdivisions (b)(1) and (g). Further, the court applied an incorrect legal standard in concluding that jurisdiction was appropriate. We will therefore reverse the court's true findings with respect to the exercise of jurisdiction under section 300, subdivisions (b)(1) and (g), and its dispositional orders.

14

## DISPOSITION

The court's jurisdictional findings and dispositional orders are reversed.

LAVIN, J.

WE CONCUR:

EDMON, P. J.

ADAMS, J.

Filed 1/30/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re R.M., a Person Coming Under the Juvenile Court Law. | B327716 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>B.S.,<br><br>        Defendant and Appellant. | Los Angeles County Super. Ct. No. 22CCJP04816A<br><br>**Order Certifying Opinion for Publication**<br><br>[No change in judgment] |

BY THE COURT:*

The opinion in the above-entitled matter, filed January 5, 2024, was not certified for publication in the Official Reports. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The opinion is ordered published in the Official Reports.

---

*EDMON, P. J.                LAVIN, J.                ADAMS, J.