228 Cal.App.3d 202 (1991)
278 Cal. Rptr. 861
In re AARON S., a Minor.
CITY AND COUNTY OF SAN FRANCISCO DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent,
v.
SHEDRICK JONES, Defendant and Appellant.
Docket No. A044930.
Court of Appeals of California, First District, Division Two.
March 8, 1991.
*204 COUNSEL
Mary G. Holbrook, under appointment by the Court of Appeal, for Defendant and Appellant.
Louise H. Renne, City Attorney, and Loretta M. Giorgi, Deputy City Attorney, for Plaintiff and Respondent.
[Opinion certified for partial publication.[*]]
OPINION
KLINE, P.J.
Shedrick Jones appeals from an order declaring his son, Aaron S., a dependent of the court. The court sustained the dependency petition on a number of grounds pertaining to the child's mother and one pertaining to appellant, that appellant was incarcerated and had not arranged for placement of the child before he was removed from the mother's custody. Appellant contends that the court misinterpreted the statute upon which this latter allegation was based, that the petition failed to provide him with adequate notice, and that the court failed to comply with a requirement that a written stipulation be obtained before a case may be heard by a temporary judge

STATEMENT OF THE CASE AND FACTS
On October 26, 1988, a petition was filed alleging that Aaron S., age two years, came within the provisions of Welfare and Institutions Code section 300, subdivision (a).[1] In the first six counts, the petition alleged that Aaron *205 was in need of proper and effective parental care and supervision and had no parent or guardian actually, or capable of, exercising such care and supervision in that (1) the mother had a substance abuse problem which required treatment as it rendered her unable to care for the minor; (2) the mother had no home for the minor; (3) the mother was unable to control the minor without resorting to physical abuse which placed him at risk; (4) the mother had failed to respond to reasonable efforts provided by the department of social services (DSS) to assist her in the care and management of the minor; (5) two siblings of the minor were dependents of the court due to the mother's substance abuse and neglect; and (6) the mother had left the minor in the care of other adults for extended periods of time, to the emotional detriment of the minor. The seventh count alleged: "Further, the father of said minor is incarcerated." The "Facts in Support of Petition" described the mother's drug abuse, history of neglect, problems maintaining housing and controlling Aaron, and failure to follow through on services offered in efforts to prevent removal. The only reference to appellant in this document was a statement that he was incarcerated and unable to care for Aaron.
A detention hearing was held on October 27, 1988, at which Aaron was released to his mother upon the conditions that the mother (1) participate in a drug treatment program at the Bay View Hunters Point Foundation; (2) take Aaron to the Audrey L. Smith Day Care Center and (3) participate in individual counseling there; and cooperate with the public health nurse and early parenting program.
The DSS report submitted for the jurisdictional hearing stated that Aaron came to the attention of DSS during the course of interaction with the family on the dependency of his younger sister, Syeeda. The report detailed the history and current situation of the mother, including her drug abuse, lack of stable housing, inability to control her children, failure to follow through on social services, and problems with her two older sons' involvement in drugs and lack of school attendance. The report indicated that appellant's mother had kept Aaron for a few days but then asked the mother to take him back because he was too hard to control. With respect to appellant, the report simply stated that he was the father of Aaron and Syeeda, was incarcerated at Jamestown, but had had contact with the social worker.
The jurisdictional hearing was held on November 28, 1988, with neither parent present. The court found the mother's failure to appear willful, found counts one through six of the petition true as to the mother and set the matter for a settlement conference as to the father and disposition as to *206 the mother on January 9, 1989. This date was continued twice, to January 17 and then January 24, 1989.
DSS filed an addendum to its earlier report on January 17, 1989. This report dealt entirely with the mother's situation, including her failure to participate in services, maintain housing, place Aaron in day care, and take Aaron and Syeeda to routine medical appointments, as well as continuing problems controlling her two older sons. On January 13, the social worker found Aaron and Syeeda dirty and hungry and took them to a shelter; appellant's mother was contacted and agreed to take Aaron into her home. The addendum did not refer to appellant. An addendum to the previously filed "Facts in Support of Petition" similarly dealt solely with the mother's situation.
On January 18, DSS filed an amended petition with allegations stated in terms of newly effective amendments to section 300.[2] With respect to the mother's conduct, the petition alleged that Aaron came within the provisions of section 300, subdivisions (b) and (j)[3] for the reasons stated in the original petition, and added an additional count alleging the mother had failed to comply with the conditions of release to such an extent that it was necessary to admit the minor into shelter on January 13, 1989. Regarding appellant, count 8 of the amended petition alleged that Aaron came within the provisions of section 300, subdivision (g) as follows: "The minor has been left with no provision for support by reason of the parent's incarceration or institutionalization in that ... the father of said minor is incarcerated."
On January 24, 1989, appellant was present for the hearing and settlement conference. It was stipulated that the matter would be submitted on the November 28, 1988, and January 17, 1989, DSS reports. The court admitted into evidence these reports as well as the original "Facts in Support of Petition" and addendum thereto. It was also stipulated that if appellant were to testify, he would state that he wanted Aaron to be cared for by the paternal grandmother, Betty Jones, if the child could not be cared for by the mother. Appellant's counsel represented that he had received a *207 letter to this effect from appellant postmarked November 14, 1988. DSS recommended that the minor be placed with Betty Jones.
After finding that the mother had been given notice as required by law and that her failure to appear was willful, the court proceeded only as to appellant. The court orally amended count 8 of the petition to read: "Further, the father of said minor is incarcerated and did not arrange for the placement of the child before he was removed from the mother's custody." The court then found that this count "brings the minor within the provisions of Section 300-G in that the minor has been left with no provision for support by reason of the parent's incarceration or institutionalization." The court found by clear and convincing evidence that an award of custody to the father would be detrimental to the child and an award to a nonparent was required to serve the best interests of the child; that there would be a substantial danger to the physical health of the minor if he was returned home, and that there were no reasonable means by which the minor's physical health could be protected without removing him from his father's physical custody. The court sustained the petition as to appellant; ordered Aaron a dependent child of the court, committed to the care and custody of DSS for placement, planning and supervision; and approved placement with Betty Jones.
Appellant filed a timely notice of appeal on January 26, 1989.

DISCUSSION

I.

The Court Misinterpreted Section 300, Subdivision (g)
Under the version of section 300, subdivision (g), in effect at the time of these proceedings, a child may be adjudged a dependent of the court if "[t]he minor has been left without any provision for support; or the minor's parent has been incarcerated or institutionalized and cannot arrange for the care of the minor; or a relative or other adult custodian with whom the child resides or has been left is unwilling or unable to provide care or support for the child, the whereabouts of the parent is unknown, and reasonable efforts to locate the parent have been unsuccessful." (Italics added.)[4] (1a) Appellant contends that the court erred in sustaining the petition on the ground that he was institutionalized and "did not arrange for the placement of the child before he was removed from the mother's custody."
*208 (2) Under fundamental rules of statutory construction, "`courts are bound to give effect to statutes according to the usual, ordinary import of the language employed in framing them.' [Citations.] ... `If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.' [Citations.]" (California Teachers Assn. v. San Diego Community College Dist. (1981) 28 Cal.3d 692, 698 [170 Cal. Rptr. 817, 621 P.2d 856].) Additionally, effect should be given whenever possible to every word and phrase of a statute, so that no part is left without meaning. (Select Base Materials v. Board of Equal. (1959) 51 Cal.2d 640, 645 [335 P.2d 672]; Weber v. County of Santa Barbara (1940) 15 Cal.2d 82, 86 [98 P.2d 492].) When the language of a statute is clear, its plain meaning should be followed, without reading unspecified restrictions into it, unless to do so would lead to an absurd result. (Ansley v. Superior Court (1986) 185 Cal. App.3d 477, 485 [229 Cal. Rptr. 771].)
(1b) The portion of section 300, subdivision (g), pertinent to this case refers to a minor whose parent "has been incarcerated and cannot arrange for the care of the minor." Webster's New Collegiate Dictionary defines "can" as "know how to" or "be physically or mentally able to." "Arrange" is defined as "to make preparations for: plan" or "to bring about an agreement or understanding concerning: settle." The use of the present tense verb in the statute, "cannot arrange," indicates that the circumstance justifying the dependency must exist at the time of the hearing. (See In re Katrina C. (1988) 201 Cal. App.3d 540, 546 [247 Cal. Rptr. 784], mod. 201 Cal. App.3d 1544a; In re James B. (1986) 184 Cal. App.3d 524, 529 [229 Cal. Rptr. 206]; In re Katherine R. (1970) 6 Cal. App.3d 354, 356 [86 Cal. Rptr. 281].) Accordingly, section 300, subdivision (g) applies when, at the time of the hearing, a parent has been incarcerated and does not know how to make, or is physically or mentally incapable of making, preparations or plans for the care of his or her child.
The trial court's amendment and remarks, however, make clear that it was focussed not on appellant's present ability to arrange care for Aaron but on his lack of action in the past. The court amended the petition to state that appellant "did not arrange for the placement of the child before he was removed from the mother's custody"; (italics added) the notation on the dispositional order recites that "father is incarcerated and has an inability to arrange for the care of the minor prior to removal from mother's home." (Italics added.) The court found at the jurisdictional hearing that the minor "was removed and placed by the Social Worker and that the father was not able to arrange for the care of the minor and that the children were neglected in the care of the mother and that he did not beforehand make arrangements for placement of the ... child with the paternal grandmother." This *209 focus on appellant's acts before Aaron was removed from the mother's custody effectively read into section 300, subdivision (g), a requirement not imposed by the statute, that an incarcerated parent make arrangements for his or her child's care before the child's removal from the custodial parent by DSS.[5]
Respondent urges that appellant's inability to arrange for Aaron's care is demonstrated by his failure to do so despite his awareness, through the family's involvement in Syeeda's dependency case, that Aaron's care was "minimal at best" and, through petitions and reports in the two dependency cases, that his children's situation was worsening. We are reluctant to charge appellant with awareness of the need for alternate caretaking arrangements when the court and DSS saw fit to leave Aaron in his mother's custody until January 13, 1989, despite pendency of the petition filed on October 26, 1988. Similarly, Syeeda was left in her mother's custody until January 13, 1989, even though dependency had been established on September 17, 1988. There is no indication in the record that appellant was aware of the circumstances surrounding the January 13, 1989, removal of the children from the mother's custody.[6]
Moreover, even assuming appellant was in fact aware of the situation, his failure to arrange for Aaron's placement before the child's removal by DSS is not sufficient in and of itself to meet the terms of section 300, subdivision (g). The statute requires proof that appellant was unable to arrange for care at the time of the hearing, not that he had failed to do so at some prior point in time. Appellant concedes that evidence of a failure to arrange for Aaron's placement before he was removed by DSS would be relevant to a determination of his present ability to make such arrangements. Such evidence, however, does not necessarily prove either that the lack of action in the past was due to inability or that any such inability continues to exist at the present time. Indeed, the fact that appellant had expressed a desire to have Aaron *210 cared for by his mother and that his mother did in fact take the child into her home at least suggests the possibility that appellant could have accomplished the same result by making the arrangements with his mother independent of DSS. In any case, there was simply no evidence before the court directly addressing the question of appellant's present ability to arrange for Aaron's care.
In addition to being unsupported by the language of the statute, the court's construction of section 300, subdivision (g) is problematic because it gives an incarcerated parent no means to remedy the circumstances leading to the statutory ground for dependency. The dependency statutes establish a process which in most cases is geared initially toward reunification of the family. To this end, reunification services are provided to families and the court must review the child's placement at six-month intervals to determine, among other things, the extent of progress toward alleviating or mitigating the causes necessitating placement in foster care. (§§ 361.5, 366.) Under the trial court's construction, once appellant failed to arrange for Aaron's placement before the child was removed by DSS, nothing could alter the reasons for the dependency except appellant's release from prison. Section 300, subdivision (g), however, clearly requires more than the fact of incarceration as the basis for a dependency; if incarceration alone were sufficient, the phrase "and cannot arrange for the care of the minor" would be meaningless surplusage.
The court's remarks also indicate that it improperly combined two clauses of the statute. After amending the petition, the court stated that the minor came within the provisions of section 300, subdivision (g) "in that the minor has been left with no provision for support by reason of the parent's incarceration or institutionalization." (3) At the time of the jurisdictional hearing, section 300, subdivision (g) provided: "The minor has been left without any provision for support; or the minor's parent has been incarcerated or institutionalized and cannot arrange for the care of the minor...." (Italics added.) The statute is written in the disjunctive, so that either of these clauses establishes a ground for dependency.[7] Given that the second clause specifically requires incarceration and inability to arrange for care, incarceration alone cannot be made the basis for a dependency by *211 using it as a fact demonstrating that the child has been left without means of support.[8]
The court made an additional finding that "by reason of the mother's neglect and inability to maintain custody of the children, ... [appellant's] incarceration makes it impossible for him to protect the children from the mother without the assistance of the Court." This finding is irrelevant to its sustaining of the petition under section 300, subdivision (g). In situations where the parents are living separately and a dependency petition is based on abuse or neglect by one parent, the question whether the nonoffending parent can protect the child from the offending one is relevant to a determination whether the petition should be dismissed altogether. (In re V.M. (1987) 190 Cal. App.3d 753 [235 Cal. Rptr. 506] [children sexually molested by father/stepfather; mother unable to have petition dismissed because record indicated possibility of family reuniting and mother's inability to protect children without aid of court]; In re Jennifer P. (1985) 174 Cal. App.3d 322 [219 Cal. Rptr. 909] [divorced father abused child during visitation; mother was able to have dependency petition dismissed because she had taken all possible steps to protect child once she learned of abuse]; In re La Shonda B. (1979) 95 Cal. App.3d 593, 600 [157 Cal. Rptr. 280] [child abused by mother; improper to dismiss petition where father had not shown capability of "`exercising proper and effective parental care'"]; In re Nicole B. (1979) 93 Cal. App.3d 874 [155 Cal. Rptr. 916] [child abused by man no longer living with mother; dependency petition properly sustained because of potential for offender's return].) Because dependency proceedings are brought on behalf of the child rather than to punish the parent (In re La Shonda B., supra, 95 Cal. App.3d at p. 599), it is appropriate to sustain a petition based on one parent's conduct if the other parent will not be able to protect the child.
Dependency proceedings must, however, safeguard parents' rights to raise their own children whenever this can be done without prejudice to the welfare of the child. (95 Cal. App.3d at p. 599.) In each of the cases just cited, the petition had been directed at the custodial parent; the question was not whether to sustain separate allegations regarding the nonoffending parent but whether the circumstances of the nonoffending parent were such that no judicial supervision was warranted. Appellant is not seeking to have the petition dismissed altogether or to have physical custody of his child; regardless of the outcome of the petition as to appellant, the court will *212 retain jurisdiction and Aaron will be placed with appellant's mother.[9] Accordingly, this case presents no issue of Aaron being left unprotected from the abuse and neglect of the mother. The only relevant questions for the trial court were whether the allegations of the petition specifically pertaining to appellant comported with the statute and were supported by the evidence.
(1c) The language of section 300, subdivision (g), demonstrates that the Legislature did not intend dependencies to be established under this statute where the incarcerated parent is able to make suitable arrangements for his or her children's care. If on remand it is determined that appellant remains incarcerated and is unable to arrange for Aaron's care, the court would be justified in sustaining the petition on this ground. If appellant is able to arrange for his son's care, however, the allegation under section 300, subdivision (g) must be stricken.[10]
.... .... .... .... .... .[*]
*213 The judgment appealed from is reversed, and the matter remanded to the trial court for further proceedings in accordance with the views expressed in this opinion.
Smith, J., concurred. Benson, J., concurred in the judgment only.
NOTES
[*] Pursuant to California Rules of Court, rules 976 and 976.1, this opinion is certified for partial publication. Those portions directed to be published follow.
[1] All further statutory references will be to the Welfare and Institutions Code unless otherwise indicated.

Section 300 was substantially revised in 1987, with the revisions to become operative on January 1, 1989. (Stats. 1987, ch. 1485, § 4.) The original petition contains allegations under the old version of section 300; as will be noted, an amended petition was filed before the jurisdictional hearing to conform to the newly effective statutory provisions.
[2] See footnote 1, ante.
[3] Under section 300, subdivision (b), the petition alleged that "[t]he minor has suffered, or there is a substantial risk that the minor will suffer, serious physical harm or illness by the inability of the parent or guardian to provide regular care for the minor due to the parent's or guardian's mental illness, developmental disability or substance abuse;" under section 300, subdivision (j), the petition alleged that "[t]he minor's sibling has been abused or neglected by reason of substantial risk of serious physical harm or illness due to the parent's mental illness, developmental disability or substance abuse; and there is a substantial risk that the minor will be abused or neglected."
[4] Section 300, subdivision (g), was amended in 1989 by deletion of the word "or" in the second clause. See discussion, post, at footnote 7.
[5] The court stated at the hearing that it was adopting as the reason for dependency "incarceration and inability to arrange for the care of the children." In the context of the wording of the court's amendment to the petition and other remarks, this statement most likely indicates that the court viewed appellant as unable to arrange for care because he did not do so before Aaron's removal from the mother's custody. To the extent it suggests a finding of present inability to arrange for Aaron's care, however, the finding is unsupported by the evidence, which did not address this issue.
[6] In an apparent attempt to show that he had attempted to arrange for Aaron's care, appellant misstates the record by asserting that the trial court left Aaron in the mother's custody at the October and November hearings "in opposition to appellant's express wishes." (Italics omitted.) The stipulation introduced at the January 24, 1989, hearing provided only that appellant had expressed a wish to have Aaron cared for by the paternal grandmother "if his child could not be cared for by the mother who had custody of the child at that time." (Italics added.)
[7] The 1989 amendments to section 300 were enacted primarily to make changes in subdivisions (d) and (h). The only change in subdivision (g) was to delete the first "or" after the first semicolon. The Legislature did not delete the "or" appearing after the second semicolon, thus retaining the disjunctive construction of the subdivision, which still consists of a single sentence. As pointed out in the Historical Note to the West Annotated California Code pertaining to section 300, the 1989 change in subparagraph (g) was "nonsubstantive."
[8] Respondent's suggestion that all of the evidence presented supported the court's finding that appellant was incarcerated and therefore unable to protect or support the minor reflects the same misinterpretation of the statute.
[9] As discussed in In re La Shonda B., supra, 95 Cal. App.3d at page 599, DSS "is not required to prove two petitions, one against the mother and one against the father, in order for the court to properly sustain a petition or adjudicate a dependency." When the court orders removal of a minor from the physical custody of the parent with whom the child resides at the time the petition is initiated, the court must determine whether there is a parent with whom the child was not residing who desires custody of the child and, if so, must place the child with that parent unless it finds such placement would be detrimental to the child. (§§ 361, 361.2; In re Tasman B. (1989) 210 Cal. App.3d 927, 935 [258 Cal. Rptr. 716], mod. 211 Cal. App.3d 413a.) Since, given his incarceration, appellant would not be able to take physical custody of his child, Aaron obviously could not be placed with appellant and the out-of-home placement ordered in the dependency as to the mother would necessarily continue at least until his release.
[10] Appellant's argument that the trial court improperly construed section 300, subdivision (g) to apply retroactively warrants only brief mention. Appellant urges that the trial court's finding that the children were neglected in the care of the mother, that Aaron was removed and placed by the social worker, and that appellant was not able to arrange for his care, and did not "beforehand" make arrangements for his placement is ambiguous as to the time before which appellant should have acted. If the court was referring to appellant's failure to arrange for Aaron's care before the dependency hearings in October and November of 1988, appellant claims, the court was retroactively applying a statute which went into effect on January 1, 1989.

The short answer to this contention is that under the proper construction of section 300, subdivision (g), the question is whether appellant was able to arrange for the care of the child at the time of the hearing. Even indulging for the sake of argument appellant's assumption that the court could not sustain the petition on the basis of acts which occurred before the effective date of the statute, there would have been no problem of retroactivity if the trial court had correctly construed the statute because the jurisdictional hearing was held on January 24, 1989. Clearly, there will be no such problem in applying the statute at a hearing on remand.
[*] See footnote, ante, page 202.