Filed 3/19/25  In re R.M. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re R.M. et al., Persons Coming Under the Juvenile Court Law. | C101331 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, | (Super. Ct. No. STK-JD-DP-2024-0000057) |
| Plaintiff and Respondent, | |
| v. | |
| J.P., | |
| Defendant and Appellant. | |

J.P. (father), father of minors G.P., J.P., and I.P., appeals from the juvenile court's jurisdictional and dispositional orders.  He contends (1) the San Joaquin County Human Services Agency (the Agency) failed to properly discharge its responsibilities under the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) and the California Indian Child Welfare Act (Cal-ICWA) (see Welf. & Inst. Code, §§ 224.2);[1] (2) certain

---

[1]  Undesignated statutory references are to the Welfare & Institutions Code.

1

jurisdictional and dispositional findings are not supported by substantial evidence; and (3) there are other errors in the juvenile court's findings and orders.

As we will explain, father's ICWA claim is premature and his other contentions lack merit. We will affirm the juvenile court's jurisdictional and dispositional orders.

BACKGROUND

On February 27, 2024, San Joaquin County Sheriff's Department deputies responded to a motel in Stockton and found S.F. (mother) in a stairwell, fully unclothed and wrapped in a blanket. She was disoriented and confused. After claiming that she had been locked out of her room when she went to her car to get clothes, mother told the deputies that her children were in two separate motel rooms. They were not. The minors and their half sibling, R.M., were at a family friend's home.[2] G.P. was 15 years old, J.P. was 14, I.P. was nine, and R.M. was two years old. When deputies checked on them, G.P. stated that their mother "started freaking out and cursing at them . . . and took off all her clothes because she was having an episode." Scared for their safety, G.P. took his siblings to mother's car and drove them to the family friend's home. Mother was arrested for child endangerment.

Based on that incident, the Agency filed a dependency petition alleging that G.P., J.P., I.P., and R.M. came within the jurisdiction of the juvenile court under section 300, subdivisions (b) and (g). With respect to subdivision (b), the Agency alleged that mother's conduct at the motel demonstrated an inability to supervise or protect the minors and subjected them to a substantial risk of harm. The Agency alleged that mother had a history of mental health issues, including "a 51/50 hold in the past for having a psychotic episode," and noted that certain "erratic statements" she made during the incident at the motel indicated that "mother's mental health impedes her ability to provide

_____

[2] R.M.'s father is deceased. As this appeal involves only claims related to G.P., J.P., and I.P., we discuss R.M. only for context.

2

safe and appropriate care to her children." The Agency further alleged that "mother's family and friend also indicated concern that [her] recent episode may have been drug-induced." In addition, the Agency alleged that father was incarcerated at North Kern State Prison, and "thus, [G.P., J.P., and I.P.] are left without a caretaker and he is unable to arrange alternate care for them." Finally, the Agency alleged that those facts also brought the minors within the juvenile court's jurisdiction under section 300, subdivision (g) because mother's conduct at the motel left them "without any provision for support" and father's incarceration made him "unable to arrange" for their care.

In the detention report, the social worker reported that his investigation had included speaking with the children, the family friend, and the maternal grandmother on the day of the incident. The social worker also spoke with mother at the jail the next day. Those conversations supported the allegations contained in the petition. The detention report also chronicled an extensive child welfare referral history spanning 15 years. Although many of the reports were deemed unfounded or inconclusive, they did evidence "a significant history of [domestic violence]" in mother and father's relationship.

At the detention hearing, held on March 1, 2024, the juvenile court found that the Agency had made a prima facie showing for the exercise of jurisdiction over the minors and ordered them detained. The younger children, I.P. and R.M., were placed with the maternal grandmother. The older children, G.P. and J.P., were placed with a paternal aunt.

The Agency's jurisdiction/disposition report recommended that the minors be removed from parental custody and that reunification services be provided to mother and father. In support of the allegations in the petition, the social worker cited (1) the detention report's summary of the social worker's investigation of the motel incident; (2) sheriff's department reports of that incident; (3) school reports documenting an incident at the children's school in which mother allegedly made threats, resulting in mother's arrest; and (4) certain mental health records. Father's criminal history

reportedly included several domestic violence related convictions. In connection with a July 2020 conviction, mother obtained a domestic violence restraining order preventing father from making contact with her or the minors. The restraining order was extended in 2023 and does not expire until July 2028. The report also noted that father's most recent conviction, for possession of a controlled substance, resulted in his incarceration at North Kern State Prison, with an expected parole eligibility date of August 2024.

Mother testified at the jurisdiction/disposition hearing, which was held on June 10, 2024. Regarding the motel incident, mother testified that she checked into the motel with her children because their home was near the school where the school incident occurred, and she believed the school district obtained a restraining order against her after that incident. After she checked into the motel, she met up with a man who gave her some marijuana to smoke. After smoking the marijuana, she did not remember anything until the sheriff's deputies woke her up the next morning. Mother believed the marijuana was laced with another substance. As for the school incident, mother testified that she went to J.P. and I.P.'s school to pick them up and talk to the principal about J.P. being "jumped at the school." The principal ignored her, so she called her a "[b]itch." While leaving with J.P., another child threatened to kill him while they were heading to their car. Mother grabbed J.P., pulled him to the car, and drove away. She was arrested later that day and spent several days in jail. The school incident reports described a different version of the incident.

The juvenile court found the jurisdictional allegations contained in the petition to be true, adjudicated the minors dependent children of the court, ordered them removed from parental custody, and ordered reunification services for both parents. Additional relevant findings and orders, and additional background relevant to father's ICWA claim, will be set forth in the discussion portion of this opinion.

4

DISCUSSION

I

Father contends the juvenile court's jurisdictional and dispositional orders must be conditionally reversed because the Agency failed to properly discharge its inquiry and documentation responsibilities under ICWA and related California law, and the juvenile court failed to ensure such compliance. Father's ICWA contention is premature.

A

The social worker spoke with mother the day after the motel incident. Mother "stated that her maternal side has Blackfoot ancestry." In the detention report, the social worker indicated mother's statement gave him "reason to believe" the minors are Indian Children, so he filled out and attached a separate ICWA-010 form for each minor. However, during his interview with the maternal grandmother, she denied such ancestry.

At the detention hearing, the juvenile court asked mother whether she had any Native American heritage. Mother answered: "Blackfoot Indian." She later stated that "all the boys have Blackfoot and Cherokee" on her side of the family.

In the jurisdiction/disposition report, the social worker again indicated that mother's statements provided him with reason to believe the minors qualified as Indian children under ICWA. Mother filled out and signed an ICWA-020 form indicating Blackfoot and Cherokee ancestry. Maternal grandmother, with whom I.P. and R.M. were placed, filled out and signed an ICWA-020 form denying such ancestry. The paternal aunt, with whom G.P. and J.P. were placed, also filled out and signed an ICWA-020 form denying Native American ancestry. The social worker indicated that he mailed an ICWA-020 form and a Family Background Interview form to father at the prison, but received no response. Based on the foregoing, the social worker stated: "There is a claim of Native American Heritage but there is not sufficient information for there to be 'reason to know' the child/family is ICWA eligible. Notice will be given by [form] ICWA-030 . . . to all federally recognized tribes and the BIA based upon the

5

information described above." The social worker listed the minors' ICWA eligibility as: "Maybe."

The Agency sent ICWA-030 forms to the BIA and the Blackfoot and Cherokee tribes for each minor. The ICWA-030 form for R.M. listed mother and the following maternal relatives: grandmother, grandfather, two great-grandmothers, two great-grandfathers, one (2x) great-grandmother, one (2x) great-grandfather, one (3x) great-grandmother, and one (3x) great-grandfather. Although the form did not list R.M.'s father, it listed his birth date. It also listed one paternal great-grandfather, but no other paternal relatives. The ICWA-030 form for G.P., J.P., and I.P. listed mother, father, the same maternal relatives listed above, and one paternal grandmother. Along with each ICWA-030 form, the Agency also sent a copy of the ICWA-020 forms completed by mother and maternal grandmother, birth certificates for mother and the minors, pages from an ancestry Website detailing various information for the maternal relatives, and a copy of the dependency petition.

The juvenile court has not yet made a finding as to whether ICWA applies.

B

"Congress enacted ICWA in 1978 in response to 'rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.' [Citation.]" (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1128 (*Dezi C.*).) ICWA's application "turns on whether the minor is an Indian child." (*Id*. at p. 1129) Cal-ICWA affirms ICWA's purposes and requires compliance with ICWA in all Indian child custody proceedings. (*Id*. at p. 1130.)

Section 224.2 of Cal-ICWA provides that child welfare agencies and the juvenile court have an affirmative and continuing duty in every dependency proceeding to determine whether ICWA applies by inquiring whether a child is or may be an Indian

6

child.  (*Dezi C., supra*, 16 Cal.5th at pp. 1131-1132.)  "When the agency has 'reason to believe' that an Indian child is involved, further inquiry regarding the possible Indian status of the child is required."  (*Id.* at p. 1132.)

Father challenges the Agency's ICWA inquiry and its documentation efforts. He also faults the juvenile court's efforts.  In response, the Agency argues the ICWA contention is not ripe for adjudication because the juvenile court has not yet made a finding that ICWA does or does not apply.

We agree with the Agency.  Because the juvenile court made no final ruling at or before the challenged hearing as to whether ICWA applied to the proceedings, father's claim is premature.  That is, any ICWA issues are not yet ripe for review. " 'Ripeness' refers to the requirements of a current controversy."  (*City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 59.)  An issue is not ripe for review unless and until it is "sufficiently concrete to allow judicial resolution even in the absence of a precise factual context."  (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170; see *id*. at pp. 170-172.)  Because the minors' dependency case is still ongoing, any perceived deficiencies with ICWA inquiry, documentation, and noticing may still be resolved during the normal course of the ongoing dependency proceedings. (See *In re M.R.* (2017) 7 Cal.App.5th 886, 904 [ICWA claim was premature where no final ICWA ruling was made at dispositional hearing]; see also *In re T.R.* (2023) 87 Cal.App.5th 1140, 1154; *J.J. v. Superior Court* (2022) 81 Cal.App.5th 447, 460-461.) This court expects the parties, attorneys and juvenile court will cooperate and timely perform their duties under ICWA and that counsel will timely and directly raise any ICWA compliance concerns directly with the juvenile court and Agency.  (See *H.A. v. Superior Court* (2024) 101 Cal.App.5th 956, 964-966 [describing this court's expectations of counsel, the juvenile court, and the Department regarding ICWA compliance].)

7

## II

Father next challenges the sufficiency of the evidence to support the juvenile court's jurisdictional finding that he could not arrange alternative care for the minors.

"Because the juvenile court assumes jurisdiction of the child, not the parents, jurisdiction may exist based on the conduct of one parent only." (*In re A.R.* (2014) 228 Cal.App.4th 1146, 1150.) Thus, so long as substantial evidence supports the juvenile court's exercise of jurisdiction based on mother's conduct, as father concedes, the general rule is that "we need not consider jurisdictional findings based on the other parent's conduct." (*Ibid.*) Under such circumstances, a jurisdictional challenge based on the other parent's conduct would generally be moot unless the jurisdictional finding (1) became the basis for challenged dispositional orders, or (2) could be prejudicial to the appellant, could impact the current or future dependency proceedings, or (3) could have other consequences for the appellant beyond jurisdiction. (*In re D.P.* (2023) 14 Cal.5th 266, 283, 285.)

Father acknowledges that the findings pertaining to mother are adequate to support jurisdiction, but he nevertheless urges us to assess the sufficiency of the evidence supporting the finding that he was unable to arrange alternative care for the minors, arguing it may have implications for future dependency proceedings and his parental rights. Father also notes that he is simultaneously challenging the juvenile court's dispositional orders. Under the circumstances, we will address father's sufficiency of the evidence claim "because the challenged jurisdictional basis is the only one asserted against him, and the juvenile court's true findings could conceivably have consequences for him beyond jurisdiction." (*In re M.R., supra*, 7 Cal.App.5th at p. 896.)

"In a challenge to the sufficiency of the evidence to support a jurisdictional finding, the issue is whether there is evidence, contradicted or uncontradicted, to support the finding. In making that determination, the reviewing court reviews the record in the light most favorable to the challenged order, resolving conflicts in the evidence in favor

of that order, and giving the evidence reasonable inferences. Weighing evidence, assessing credibility, and resolving conflicts in evidence and in the inferences to be drawn from evidence are the domain of the trial court, not the reviewing court." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 450-451.)

Section 300, subdivision (g) provides that a child may be adjudged a dependent of the court if, among other things, "the child's parent has been incarcerated or institutionalized and cannot arrange for the care of the child . . . ." This provision "applies when, at the time of the hearing, a parent has been incarcerated and does not know how to make, or is physically or mentally incapable of making, preparations or plans for the care of his or her child." (*In re Aaron S.* (1991) 228 Cal.App.3d 202, 208 (*Aaron S.*).)

Father argues the evidence is insufficient to support the juvenile court's finding that he "is currently incarcerated at North Kern State Prison, [and] thus, the minors are left without a caretaker and he is unable to arrange alternate care for them." He relies primarily on *Aaron S., supra*, 228 Cal.App.3d 202 in making this argument. There, as here, the bulk of the dependency allegations were directed at the mother and the only allegation specifically directed at the father was his incarceration and inability to arrange for the care of the minor. (*Id*. at pp. 204-205.) The appellate court reversed the trial court's finding in this regard because "it was focused not on [the father's] present ability to arrange care for [the minor] but on his lack of action in the past," i.e., before the minor's removal from the mother's custody. (*Id*. at p. 208.) The proper focus, however, should have been on the father's ability to arrange alternate care at the time of the hearing. The fact that he failed to do so at an earlier time was relevant but not dispositive because it "does not necessarily prove either that the lack of action in the past was due to inability or that any such inability continues to exist at the present time." (*Id*. at p. 209.) The court also noted that the father "expressed a desire to have [the minor] cared for by his mother and that his mother did in fact take the child into her home," suggesting a

"possibility that [the father] could have accomplished the same result by making the arrangements with his mother independent of DSS." (*Id*. at pp. 209-210.) Thus, the evidence did not support a finding that the father lacked the "*present ability* to arrange for [the minor's] care." (*Id*. at p. 210; see also *In re M.R., supra*, 7 Cal.App.5th at p. 897 [jurisdiction under section 300, subdivision (g) not authorized by incarceration alone or failure to make an advance plan for the minor's care].)

Here, there is no dispute as to father's incarceration or his extensive criminal history involving domestic violence offenses. As for his present ability to arrange alternate care for the minors, it is undisputed that there is a current restraining order against him protecting mother and the children. In addition, father waived his right to be present at the contested jurisdiction/disposition hearing, did not attend the hearing, and did not respond to correspondence that the Agency sent to him at the prison.

Unlike in *Aaron S.*, where the juvenile court focused on the wrong time frame and there was evidence demonstrating a possibility that the father could have arranged alternate care for his son, here there is no suggestion that the juvenile court focused on the wrong time frame, and no evidence that father was able to arrange for the minors' care. The evidence at the hearing was to the contrary. These facts also distinguish this case from *In re R.M.* (2024) 99 Cal.App.5th 240, where "the Department 'pleaded and proved only that [mother] had been incarcerated, but not that she was unable to arrange for care of' [the minor]" (*id*. at p. 250, italics omitted), and *In re M.R., supra*, 7 Cal.App.5th 886, where the father "affirmatively asserted his ability to make arrangements for [the minors'] care . . . ." (*Id*. at p. 897.)

Finally, father challenges the same finding under section 300, subdivision (b). However, jurisdiction under that subdivision does not require a finding of incarceration or present inability to arrange for care. Instead, it provides for jurisdiction where "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of," among other things, "[t]he failure or inability of the

10

child's parent or guardian to adequately supervise or protect the child," or "[t]he inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse." (§ 300, subd. (b).) Findings under that subdivision were made with respect to mother and are not challenged on appeal. Of course, if father was able to arrange for alternate care notwithstanding his incarceration, thereby protecting the minors from mother's conduct, "the petition should be dismissed altogether." (*Aaron S., supra*, 228 Cal.App.3d at p. 211.) But for reasons already expressed, the record supports the juvenile court's finding that father had no such ability.

III

Father also challenges the sufficiency of the evidence to support dispositional findings regarding the minors' removal.

A

"To remove a child from parental custody, the court must make one of five specified findings by clear and convincing evidence. [Citation.] One ground for removal is that there is a substantial risk of injury to the child's physical health, safety, protection or emotional well-being if he or she were returned home, and there are no reasonable means to protect the child." (*In re V.L.* (2020) 54 Cal.App.5th 147, 154; see § 361, subd. (c)(1).) Another is that the child "has been left without any provision for their support, or a parent . . . who has been incarcerated . . . cannot arrange for the care of the minor . . . ." (§ 361, subd. (c)(5).) " ' "Clear and convincing" evidence requires a finding of high probability. The evidence must be so clear as to leave no substantial doubt. It must be sufficiently strong to command the unhesitating assent of every reasonable mind. [Citations.]' [Citation.] Actual harm to a child is not necessary before a child can be removed. 'Reasonable apprehension stands as an accepted basis for the exercise of state power.' [Citation.]" (*In re V.L.,* at p. 154.)

11

Section 361, subdivision (e) provides, in relevant part: "The court shall make a determination as to whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from their home or, if the minor is removed for one of the reasons stated in paragraph (5) of subdivision (c), whether it was reasonable under the circumstances not to make any of those efforts . . . . The court shall state the facts on which the decision to remove the minor is based."

"A juvenile court's removal order at a disposition hearing will be affirmed on appeal if it is supported by substantial evidence." (*In re V.L., supra*, 54 Cal.App.5th at p. 154.)

B

The juvenile court found by clear and convincing evidence that the minors had to be removed from mother's custody for two reasons: (1) because of a substantial danger to their physical health, safety, protection, or well-being if they were returned home and there were no reasonable means to protect the minors without removal; and (2) the minors were left without provision for their support. The juvenile court also found that placement in the home of father would create a substantial danger to their physical health, safety, protection, or well-being and there were no reasonable means to protect the minors without removal. The juvenile court further found that the minors "were left without provision of support and under the circumstances it was reasonable not to make reasonable efforts to prevent or eliminate the need for removal . . . ." One of the facts upon which the foregoing findings were based is the following: "The father . . . is currently incarcerated at North Kern State Prison, thus, the minors are left without a caretaker and he is unable to arrange alternate care for them."

Father challenges the sufficiency of the evidence supporting the finding that it was reasonable for the Agency not to make reasonable efforts to prevent removal for one of the reasons stated in section 361, subdivision (c)(5), i.e., because father was incarcerated

12

and unable to arrange alternate care for the minors.  Father concedes that the social worker attempted to communicate with him in prison, but argues more attempts should have been made.  We conclude the record adequately supports the juvenile court's determination, however, because father did not respond to the correspondence he concedes was sent to him at the prison, he affirmatively waived his right to be present at the contested jurisdiction/disposition hearing, his attorney did not indicate at the hearing that father requested custody or that father had an alternate placement in mind, and there is a current restraining order against father protecting the children.

Father also challenges the sufficiency of the evidence supporting the juvenile court's finding that a substantial danger to the minors' physical health, safety, protection, or well-being existed if they were returned home and there are no reasonable means to protect the minors without removal.  According to father, the shortcoming in the evidence is a lack of evidence that the juvenile court or Agency "considered whether the possibility of placing the children with the paternal aunt resolved the issue of preventing substantial danger to the children."

In making this argument, father relies on section 361.2, which provides in relevant part:  "If a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child.  *If that parent requests custody*, the court shall place the child with the parent *unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child*."  (§ 361.2, subd. (a), italics added.)  Father also relies on *In re Noe F.* (2013) 213 Cal.App.4th 358 for the proposition that "the dependency court may consider placing a child with a noncustodial, *incarcerated* parent under section 361.2 if that parent seeks custody of the child, the parent is able to make appropriate arrangements for the child's

13

care during the parent's incarceration and placement with the parent is not otherwise detrimental to the child." (*Id*. at pp. 368-369, italics added.)

As we have indicated, however, father never requested custody of the minors. The juvenile court also found that placing the minors with father would create a substantial danger to their health, safety, protection, or well-being. This finding is supported by father's incarceration, his history of domestic violence, and the domestic violence restraining order protecting the minors from him. And we have already explained that the finding that he was unable to make appropriate arrangements for their care is also supported by the record. Thus, father's challenge to the sufficiency of the evidence in this regard also fails.

IV

Father also claims the juvenile court erred by failing to order visitation for him, and by failing to inquire whether the older children wanted contact with him.

"In order to preserve an issue for appeal, a party ordinarily must raise the objection in the trial court. [Citation.] 'The rule that contentions not raised in the trial court will not be considered on appeal is founded on considerations of fairness to the court and opposing party, and on the practical need for an orderly and efficient administration of the law.' [Citations.] Otherwise, opposing parties and trial courts would be deprived of opportunities to correct alleged errors, and parties and appellate courts would be required to deplete costly resources 'to address purported errors which could have been rectified in the trial court had an objection been made.' [Citation.] In addition, it is inappropriate to allow any party to 'trifle with the courts by standing silently by, thus permitting the proceedings to reach a conclusion in which the party could acquiesce if favorable and avoid if unfavorable.' [Citation.]" (*In re S.C.* (2006) 138 Cal.App.4th 396, 406.) Where an appellant raises a claim on appeal, but did not raise it below, or does not "cite to the record showing exactly where the objection was made,"

14

we "can simply deem the contention to lack foundation and, thus, to be forfeited." (*Id*. at pp. 406 & 407.)

Here, father's opening brief does not cite this court to any portion of the record showing a request for visitation, or an objection to the juvenile court's failure to order visitation or to inquire whether the older children wanted contact with father. Father's reply brief concedes "no specific objection to the lack of a visitation order was made." These claims are therefore forfeited.

V

Finally, father challenges the components of his reunification plan. He contends the juvenile court erred by ordering him to participate in services that were not available at his prison and by ordering substance abuse treatment.

"Family preservation, with the attendant reunification plan and reunification services, is the first priority when child dependency proceedings are commenced. [Citation.] Reunification services implement 'the law's strong preference for maintaining the family relationships if at all possible.' [Citation.] 'To achieve the goal of preserving the family whenever possible, the Legislature required the county child welfare departments to develop and implement family reunification plans and required the courts to monitor those plans through periodic review.'" (*In re Elizabeth R.* (1995) 35 Cal.App.4th 1774, 1787.)

"The case plan is 'the foundation and central unifying tool in child welfare services' and is prepared . . . to ensure that 'services are provided to the child and parents' to 'facilitate the safe return of the child to a safe home.' [Citation.] A reunification case plan has several components, including the identification of specific goals and the appropriateness of planned services in meeting those goals." (*In re M.C.* (2023) 88 Cal.App.5th 137, 154-155.)

"We review the juvenile court's disposition case plan for abuse of discretion. [Citation.] 'When the court orders a parent to participate in a program—such as parent

15

education, counseling, parenting programs, etc.—the program must be "designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300." ' [Citation.] 'In other words, the court cannot arbitrarily order services that are "not reasonably designed" to eliminate the behavior or circumstances that led to the court taking jurisdiction of the child.' [Citation.]" (*In re M.C., supra*, 88 Cal.App.5th at p. 155.)

Here, the juvenile court determined that providing reunification services to mother and father was in the best interests of the minors. Father does not challenge that determination. He does challenge the juvenile court's adoption of the case plan without first determining that the reunification services were available to him in prison. He also challenges the requirement that he complete a substance abuse treatment program.

We find no abuse of discretion. The jurisdiction/disposition report notes that on March 1, 2024, the social worker contacted the litigation coordinator at North Kern State Prison to determine what services would be available for father. The social worker was informed that father was temporarily being held in the prison's reception center while he awaited transfer to a different facility, where "he will have access to classes, programs, jobs and[/]or education services." The report also notes that father's most recent conviction was for possession of a controlled substance and his expected parole eligibility date was in August 2024. At the June 10, 2024 hearing, the juvenile court was informed that father still had no access to programs, but the Agency was continuing to check in with the litigation coordinator. The case plan adopted by the juvenile court includes the modifying language "if the prison has those programs." It also requires father to participate in certain programs "upon release" from prison. As father acknowledges in his reply brief, the juvenile court understood that certain services were apparently not available to father where he was currently housed and ordered the Agency to file amended findings and orders showing that services would begin upon his release, which it did. It was not an abuse of discretion to order father to participate in services

16

available to him at his prison, if any, and also upon his release.  It was also not an abuse of discretion to order substance abuse treatment where father's current incarceration was a drug-related offense and certain domestic violence incidents noted in the jurisdiction/disposition report appear to have been related to substance abuse.

DISPOSITION

The juvenile court's jurisdictional and dispositional orders are affirmed.


/S/
MAURO, J.



We concur:



/S/
ROBIE, Acting P. J.



/S/
FEINBERG, J.

17