Filed 9/18/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re A.M., a Person Coming Under the Juvenile Court Law. | B343879 |
| _____ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,  Plaintiff and Respondent,  v.  A.M.,  Defendant and Appellant. | Los Angeles County Super. Ct. No. 24CCJP03240A |

APPEAL from an order of the Superior Court of Los Angeles County, Stephen C. Marpet, Commissioner. Reversed in part and remanded.

Marissa Coffey, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica Buckelew, Deputy County Counsel, for Plaintiff and Respondent.

_____

A juvenile court may not remove a child from her father simply because her father is in prison. If the father has made a suitable plan for the proper care of his daughter during his incarceration, the court must respect this parent's right to the care, custody, and management of his child, which is a fundamental liberty interest.

The juvenile court incorrectly removed A.M. from her father. A.M. rightly appeals this aspect of the court's dispositional order. Citations are to the Welfare and Institutions Code.

I

The Department involved itself with this family shortly after A.M.'s birth. The allegation was that the mother's substance abuse put A.M. at risk and that the father failed to protect A.M. from her mother. The juvenile court asserted jurisdiction over A.M., who began living with her father when she was a few months old. They lived with paternal aunt Martha M. and with Martha's two children. Also in this household was the paternal grandmother. When the juvenile court terminated jurisdiction, it awarded the father sole physical custody, the parents joint legal custody, and the mother unmonitored visits.

Years passed.

Shortly before A.M. turned seven, police discovered a gun and hundreds of pills in the father's car. The father went to prison. Beforehand, he arranged for Martha to care for A.M. when he was incarcerated. He gave Martha A.M.'s educational and medical documents and a notarized letter establishing temporary custody. The father called A.M. every other day.

For about a month, the father's plan worked. But then, when the mother picked A.M. up for a visit, she learned the

father was in prison and she refused to return A.M. to Martha. Martha had no legal recourse.

The mother did poorly by A.M.

Mother seemed high on drugs while caring for A.M., according to neighbors. The mother was not getting A.M. to school regularly. A.M. confirmed reports of bedbugs and roaches in the mother's apartment. A social worker saw bites on A.M.'s arms and legs.

The mother was combative.

While A.M. was residing with her, the mother fought with neighbors in the laundry room. After threatening to get some friends, the mother left and returned half an hour later with two other people, one of whom carried a sawed off shotgun. After the altercation, the mother left the apartment complex with A.M. to hide from police.

One neighbor got a restraining order against the mother. Police arrested the mother for violating the order.

School staff said A.M. had many absences and the mother often came too early or too late to pick up A.M. Her rapid speech, disorganized thoughts, paranoia, and inappropriate laughter made social workers think the mother was using drugs. The mother acted oddly and seemed under the influence. She repeatedly appeared at school in her bathing suit, accompanied by different men.

Police incarcerated the mother for driving a stolen car, which prompted the Department to place A.M. back with Martha.

A.M. said she was happy living with Martha and felt safe. She did not want to return to her mother's care. By the time of the jurisdiction hearing, A.M. was refusing even to visit with her mother. A.M.'s counsel noted that just being close to her

mother during the hearing caused A.M. to breathe heavily and to be very uncomfortable.

On account of incarceration, neither parent attended the detention hearing. The juvenile court originally detained A.M. only from the mother. However, after noting that a lack of removal from the father might impair Martha's ability to get funding, at county counsel's suggestion, the court decided to detain from both parents and to reassess the issue as to father at the next hearing.

At the arraignment hearing, A.M.'s counsel tried to raise the detention issue as to father, and the court said, "No. No. No." Without further discussion, the juvenile court stated it would detain A.M. from the father.

At the adjudication hearing, the court sustained a jurisdictional allegation against the father that his criminal history and violent conduct impaired his ability to parent adequately and to protect A.M. The court ruled the same factors endangered A.M.'s physical health and safety and put her at risk of serious physical harm, damage, and danger.

Both the father's counsel and A.M.'s counsel argued that, because the father had made an appropriate plan for A.M.'s care, the court should not remove A.M. from him. The court disagreed, noting that the father committed criminal actions, including carrying a concealed weapon, when he had sole physical custody of A.M. The court removed A.M. from both parents, citing section 361, subdivisions (a)(1), (c), and (d), and section 362(a).

A.M. appealed the court's decision to remove her from her father.

II

4

A.M. correctly argues the juvenile court erred by removing her from her father.  The father made an appropriate plan for her care.  Placement with her father would not have put A.M. at risk.

We first identify the exact basis for the court's ruling. According to the minute order, the juvenile court removed A.M. from both "parents" on the basis of:

- section 361, subdivision (a)(1),
- section 361, subdivision (c),
- section 361, subdivision (d), and
- section 362, subdivision (a).

We survey these sections.

Section 361, subdivision (a)(1) and section 362, subdivision (a) generally set forth the court's authority to limit the control a parent may exercise over a dependent child and to make orders for the care of the child.

Section 361, subdivision (c) enumerates the circumstances under which a child can be removed from a parent with whom the child lived at the time the petition was initiated.  We assume this basis applies to the mother because A.M. was living with her mother when the Department filed the petition.

Therefore, it appears the court's basis for removing A.M. from the father was section 361, subdivision (d).

This section applies to a parent with whom the child did not live at the time the petition was initiated.  It states that the child shall not be removed from the physical custody of this parent unless the court "finds *clear and convincing evidence* that there would be *a substantial danger to the physical health, safety, protection, or physical or emotional well-being* of the child for the parent . . . to live with the child or otherwise exercise the parent's . . . right to physical custody, and there are no reasonable means

5

by which the child's physical or emotional health can be protected without removing the child from the child's parent's . . . physical custody." (§ 361, subd. (d), italics added.)

We review to determine if substantial evidence supported the juvenile court's determination. (*In re J.N.* (2021) 62 Cal.App.5th 767, 776–777 (*J.N.*).)

No substantial evidence supported the court's ruling, because the father's plan for the care of A.M. was satisfactory and no evidence showed peril to A.M.

"You lose your child if you go to jail" is not the rule in California. (*J.N.*, *supra*, 62 Cal.App.5th at p. 778.)

When an incarcerated parent can make suitable arrangements for a child's care during incarceration, the juvenile court lacks a basis to take jurisdiction in the case, and the Department has no say in the matter. (*In re Isayah C.* (2004) 118 Cal.App.4th 684, 696, 700 (*Isayah*).)

A.M. had lived with her father for most of her life. There was a previous case with the Department, but the allegation against the father was only that he allowed the mother to have access to A.M., which the court had restricted. The Department raised no other concerns about the father's conduct or care.

The juvenile court focused on the fact that part of the father's criminal history overlapped with his having sole physical custody of A.M. This alone does not support jurisdiction or removal. Where a parent is involved in criminal activity, there must be a specific nexus to support court involvement. (*J.N.*, *supra*, 62 Cal.App.5th at p. 776 [generalities about crime do not satisfy the Department's burden of proving an identified, specific hazard in the child's environment that poses a substantial risk of serious physical harm].)

6

A.M. was not present for, or affected by, the father's criminal activity. There was no evidence of that kind.

The juvenile court misapplied the burden of proof by relying on the *absence* of evidence that A.M. *was not* present for, or affected by, the father's crimes. That burden belonged to the Department. (*J.N., supra*, 62 Cal.App.5th at p. 776 [Department must establish a connection between past crime and some likely future harm endangering the child].)

When a court applies this section to an incarcerated parent, the question is whether the child would face an identified, specific hazard in the child's environment posing a substantial risk of serious physical harm to her while in the care arranged by the incarcerated parent. (*J.N., supra*, 62 Cal.App.5th at pp. 776.)

As noted, the father planned for Martha to care for A.M. while he was in prison. The record contains no evidence Martha's care and environment posed any hazard to A.M.

The juvenile court improperly blamed the father for failing to protect A.M. because the mother would not release A.M. after a visit. The juvenile court and Department made repeated comments that the father had started the process of arranging for A.M.'s care but had not been able to effectuate it. Yet the Department also noted that, because the parents had joint legal custody, *the father did not have the right* to keep A.M. from the mother.

The father could not be blamed for failing to do what he lacked the legal right to do.

In evaluating whether a parent can satisfactorily arrange for a child's care, the court looks at the parent's ability at the time of the hearing. (*In re Aaron S.* (1991) 228 Cal.App.3d 202, 208.) Given that the father's care plan at the time of the hearing

7

was the same as the Department's and as the one adopted by the court, his plan was appropriate.

Neither the father's criminal history, nor his incarceration, given his plan for A.M.'s care, provided substantial evidence to support the juvenile court's finding that there was serious danger to A.M.'s physical or emotional well-being. If the court had not removed A.M. from the father, *she would be in exactly the same situation as she is currently*. The difference is now there is an unnecessary clock on reunification. (*In re Paul E.* (1995) 39 Cal.App.4th 996, 1003 [reunification firebreak in dependency system, starting clock on permanency planning].)

We reject the Department's argument that the father and A.M. forfeited any challenge to removal by not raising it below. A.M. is the appealing party. Forfeiture by the father is irrelevant. A.M did not forfeit the issue. She consistently has argued her father made an appropriate plan.

## DISPOSITION

We reverse the portion of the order removing A.M. from her father. Because we lack knowledge of recent changes to this family's circumstances, we remand for the juvenile court to take such measures as may be appropriate in light of our decision. (See *Isayah, supra*, 118 Cal.App.4th at p. 701.)


WILEY, J.

We concur:


STRATTON, P. J.          VIRAMONTES, J.

8